John A. CASTEEL, a/k/a Tayr Kilaab Al Ghashiyan (Khan), Plaintiff-Appellant,†

v.

Gary R. MC CAUGHTRY, Thomas Borten, Thomas Gozinske, William Lackey, Frank Mesa, Dan Pashke, Timothy Morris, Ray Fromolz and Thomas Nickel, Defendants-Respondents.

Court of Appeals

*No. 91–0218. Submitted on briefs September 6, 1991.—Decided April 30, 1992.*

(Also reported in 484 N.W.2d 579.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the brief of *John A. Casteel, a/k/a Tayr Kilaab Al Ghashiyan (Khan),* pro se, of Waupun.

For the defendants-respondents the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Joanne F. Kloppenburg,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. John A. Casteel, a/k/a Tayr Kilaab Al Ghashiyan, an inmate at Waupun Correctional Institution, has appealed from an order dismissing his complaint against the warden and security director at Waupun and several Waupun employees whom he describes as "jailers."[1] Casteel brought this action under

---

[1]Defendant Gary R. Mc Caughtry is the warden and Thomas Borten is the security director. The persons identified as jailers

42 U.S.C. sec. 1983 and the laws of Wisconsin. The trial court dismissed the complaint for failure to state a claim.

Whether the complaint states a claim turns on (1) the effect of Casteel's failure to allege he had exhausted his administrative remedies and had complied with a state notice of claim statute, sec. 893.82, Stats., and (2) the sufficiency of the allegations to plead a sec. 1983 claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We conclude that Casteel's failures to exhaust his remedies and to give notice of claim bar his state law claim but not his sec. 1983 claim, and his complaint states a claim under sec. 1983. We therefore affirm in part and reverse in part and remand for further proceedings.

Casteel's complaint alleges that on six occasions between March 1985 and January 1990, he was removed from the general prison population and placed in temporary lockup (TLU). Wisconsin Adm. Code sec. DOC 303.11 governs TLU.[2] On each occasion, he alleges sec.

---

are: Thomas Gozinske, William Lackey, Frank Mesa, Dan Pashke, Timothy Morris, Ray Fromolz and Thomas Nickel.

[2]Wisconsin Adm. Code sec. DOC 303.11 provides:

(1) An inmate may be placed in temporary lockup (TLU) by a security supervisor, security director, or superintendent.

(2) If the inmate is placed in temporary lockup by a security supervisor, the security director shall review this action on the next working day. Before this review and the review provided for in sub. (3), the inmate shall be provided with the reason for confinement in TLU and with an opportunity to respond, either orally or in writing. Review of the decision must include consideration of the inmate's response to the confinement. If, upon review, it is determined that TLU is not appropriate, the inmate shall be released from TLU immediately.

(3) No inmate may remain in TLU more than 21 days, except that the superintendent, with notice to the division administrator, may extend this period for up to 21 additional days for cause. The security director shall review the status of each inmate in TLU every

DOC 303.11 was violated, in that he was not served with a copy of a conduct report before being placed in TLU, given a hearing on whether TLU was appropriate (sub. (2)), given an opportunity to respond as to why TLU was

7 days to determine whether TLU continues to be appropriate. If upon review it is determined the TLU is not appropriate, the inmate shall be released from TLU immediately.

(4) An inmate may be placed in TLU and kept there only if the decision maker is satisfied that it is more likely than not that one or more of the following is true:

(a) If the inmate remains in the general population, the inmate will seek to intimidate a witness in a pending investigation or disciplinary action;

(b) If the inmate remains in the general population, he or she will encourage other inmates by example, expressly, or by their presence, to defy staff authority and thereby erode staff's ability to control a particular situation;

(c) If the inmate remains in the general population, it will create a substantial danger to the physical safety of the inmate or another;

(d) If the inmate remains in the general population, it will create a substantial danger that the inmate will try to escape from the institution; or

(e) If the inmate remains in the general population, a disciplinary investigation will thereby be inhibited.

(5) When an inmate is placed in TLU, the person who does so shall state the reasons on the appropriate form and shall include the facts upon which the decision is based. The inmate shall be given a copy of the form. Upon review, the security director shall approve or disapprove the TLU on the form.

(6) Conditions in TLU shall, insofar as feasible, be the same as those in the status from which the inmate came prior to TLU placement. An inmate who had been earning compensation shall continue to be compensated at the rate earned in his or her previous status, except that an inmate employed by corrections industries shall be compensated in accordance with s. DOC 313.08. If 1983 Wis. Act 528 does not apply to the inmate, he or she shall continue to earn extra good time credit. The inmate may be required to wear mechanical restraints, as defined in s. DOC 306.09(1), while outside the cell if the superintendent or designee determines that the use of mechanical restraints is necessary to protect staff or inmates or to maintain the security of the institution.

unnecessary and given the reasons for the TLU placement or the facts for the decision (subs. (2) and (5)), the security director did not review his TLU placement on the following work day (sub. (2)), and the defendants failed to properly review his TLU status every seven days (sub. (3)). He was not allowed to watch television, listen to the radio, have cosmetics, use tobacco or attend religious services, all of which caused him physical and mental suffering. He alleges that the defendants acted in bad faith and in disregard of their duties under the United States Constitution and the laws of Wisconsin. He specifically claims they violated the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution. The complaint seeks a declaratory judgment that the practices complained of were illegal and unconstitutional, a permanent injunction preventing the defendants from continuing those practices, and damages.

The defendants moved to dismiss the complaint. The trial court granted the motion because Casteel had failed to allege that he had exhausted his administrative remedies under the Inmate Complaint Review System, Wis. Adm. Code sec. DOC 310. The court did not determine whether the complaint otherwise stated a claim.

## SECTION 1983 CLAIM

The reason given by the trial court to dismiss the sec. 1983 claim, Casteel's failure to allege he had exhausted his administrative remedies, is insufficient. While this appeal was pending, the Wisconsin Supreme Court held that a plaintiff need not exhaust administrative remedies before bringing a sec. 1983 action in state court. *Casteel v. Vaade,* 167 Wis. 2d 1, 20-21, 481 N.W.2d 476, 484 (1992).

765

We turn to whether Casteel's complaint states a sec. 1983 claim. Three kinds of sec. 1983 claims may be brought against the state under the Due Process Clause of the Fourteenth Amendment: first, for a state official's violation of defendant's rights under a specific protection in the Bill of Rights; second, a violation of substantive due process; and, third, a violation of procedural due process. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).

Casteel's complaint fails to allege a sec. 1983 claim of the first type. That he could not watch television, use his radio, or have cosmetic items or tobacco products are minor deprivations. Those deprivations do not violate the right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) (restrictive and even harsh conditions are "part of the penalty that criminal offenders pay for their offenses against society"); *Adams v. Pate,* 445 F.2d 105, 109 (7th Cir. 1971). They are unrelated to any of the other amendments to the United States Constitution Casteel refers to in his complaint.

The free exercise of religion is of course a First Amendment right. However, an inmate's right to practice religion may be infringed to the extent that the infringement is reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987). Wisconsin Adm. Code sec. DOC 303.11 has a legitimate penological interest.

> The main purpose of the section authorizing temporary lockup is to allow temporary detention of an inmate until it is possible to complete an investigation, cool down a volatile situation or hold a discipli-

nary hearing. The effort is to avoid punitive segregation without a prior hearing, while assuring that inmates can be separated from the general population when there is good reason to do so. The policy is to keep an inmate in TLU only as long as necessary and then either to release the inmate or put the inmate in segregation based on a disciplinary hearing which conforms to the provisions of this chapter.

Appendix to Wis. Adm. Code ch. 303, note: DOC 303.11.

■

Restrictions on an inmate's participation in general population programs while in TLU are based on the prison concerns for security and discipline reflected in Wis. Adm. Code sec. DOC 303.11(4)(a)-(e). Those concerns justify temporary limitations on religious practice.

■

Casteel's complaint fails to allege the second kind of sec. 1983 claim, violation of substantive due process. A violation of substantive due process pertains to violation of a fundamental right. Inmates have no fundamental right to remain in one part of a prison and not to be transferred to another. "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms,* 459 U.S. 460, 468 (1983). An inmate may be placed in segregation status if he is afforded procedural due process. *Wolff v. McDonnell,* 418 U.S. 539, 556-57 (1974). Casteel's complaint fails to allege any other acts amounting to violations of a fundamental right.

■

We next examine Casteel's complaint to determine whether it alleges a sec. 1983 claim of the third type described by the *Zinermon* court, violation of procedural

due process. When a procedural due process violation is claimed and state action has occurred, the first question is whether the plaintiff has been deprived of a constitutionally protected interest in life, liberty or property. If such a deprivation occurred, we reach the next level of analysis: what process was provided and whether it was constitutionally adequate. *Zinermon,* 494 U.S. at 126.

Casteel claims that he possesses a constitutionally protected liberty interest created by Wis. Adm. Code sec. DOC 303.11. The liberty interest is staying out of and getting out of TLU. To create a protected liberty interest, a state law or rule must employ "language of an unmistakenly mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed . . . and that [the challenged action] will not occur absent specified substantive predicates . . . ." *Hewitt,* 459 U.S. at 471–72 (citation omitted).

Stated simply, the

> "State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona,* 461 US [238, 249 (1983)] . . .. [T]he most common manner in which a State creates a liberty interest is by establishing "substantive predicates" to govern official decisionmaking, *Hewitt v. Helms,* 459 US, at 472, . . . and, further, by mandating the outcome to be reached upon a finding that the relative criteria have been met.

*Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462 (1989).

Thus, to create a constitutionally protected liberty interest, a statute or rule must (1) use mandatory language and (2) impose a substantive limitation on official

768

discretion by mandating the outcome upon a finding that relative criteria had been met.

Wisconsin Adm. Code sec. DOC 303.11 meets the first test. It uses mandatory language. Subsection (4) provides that "[a]n inmate may be placed in TLU and kept there only if the decision maker is satisfied that it is more likely than not that one or more of the following is true: . . .." In this context, "may" is mandatory, since it allows placing an inmate in TLU "only if" certain circumstances exist.

Subsection (2) contains mandatory language regarding review and termination of the placement once it has been made. It provides that the security director "shall" review placement on the next working day. Before that review occurs the inmate "shall" be provided with the reason for confinement and with an opportunity to respond. Review of the placement decision "must" include consideration of the inmate's response. If upon review it is determined that TLU is not appropriate, the inmate "shall" be released from TLU immediately. Subsection (3) provides that an inmate may not remain in TLU for more than twenty-one days unless the superintendent extends the period for cause.

Wisconsin Adm. Code sec. DOC 303.11 also meets the second test for the creation of a constitutionally protected liberty interest. It imposes a substantive limitation on official discretion. The effect of sub. (4) is that an inmate cannot be placed in TLU unless the decision maker is "satisfied" that it is more likely than not that one or more of the specified circumstances exists. The decision maker possesses a large degree of discretion in deciding whether he or she "is satisfied that it is more likely than not that one or more" of the prerequisites listed in that subsection are true. But if the decision maker is satisfied that such is the case, then and only

then may the decision maker place the inmate in TLU. That the decision maker possesses discretion in this regard does not prevent a protected liberty interest from arising in staying out of TLU. The presence of official discretion is not incompatible with the existence of a liberty interest when a certain result is required after the officer makes a discretionary determination. *Board of Pardons v. Allen,* 482 U.S. 369, 376 (1987).

Nor does the inherently subjective nature of the decision under sub. (4) prevent an inmate from possessing a liberty interest. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12–13 (1979).[3] If the decision maker is not "satisfied" that it is likely that one of the specified circumstances exists, placement in TLU is prohibited.

██ Having concluded that Wis. Adm. Code sec. DOC 303.11(4) creates a liberty interest, the next question is what process has been afforded by the state to an inmate placed in TLU.

---

[3]We disagree with the analysis in *Russ v. Young,* 895 F.2d 1149, 1153–54 (7th Cir. 1990), which held that because sub. (4) provides that an inmate "may" be placed in TLU, it employs discretionary rather than the unmistakably mandatory language required under *Hewitt.* The Seventh Circuit has since questioned its analysis in *Russ. Smith v. Shettle,* 946 F.2d 1250, 1252–53 (7th Cir. 1991). We also disagree with the *Russ* court's conclusion that a constitutionally protected liberty interest in staying and getting out of TLU does not exist since the rule allows removal of an inmate from the general population when the charging officer "subjectively believes" it is more likely than not that any of the criteria set forth in the rule are met, regardless of whether in fact they are actually met. If the charging officer subjectively believes it is not more likely that any of the criteria had been met, then the rule prohibits placing an inmate in TLU. If, upon review, it is determined that TLU is not appropriate, the inmate "shall be released from TLU immediately."

As we read Casteel's complaint, he does not assert that the process to which he was entitled under Wis. Adm. Code sec. DOC 303.11(2), (3) and (5) is constitutionally deficient. Rather, he contends that he was not provided the process that was due him under those subsections. Under these circumstances, we need not decide whether the process due him under the rule is constitutionally sufficient. He was not afforded even that process.

We conclude that Casteel's complaint states a claim under 42 U.S.C. sec. 1983 for violation of procedural due process, the third type of sec. 1983 claim outlined by the *Zinermon* court. The order dismissing that part of the complaint must be reversed and the matter remanded for further proceedings.

## STATE LAW CLAIM

Casteel's failure to allege his compliance with sec. 893.82(3), Stats., a notice of claim statute, bars his right to bring an action against defendants for damages under state law. Section 893.82(3) provides in relevant part:

> [N]o civil action or civil proceeding may be brought against any state officer, employe or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employe's or agent's duties . . . unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including

the name of the state officer, employe or agent involved.

Section 893.82(3), Stats., imposes a condition precedent to the right to maintain an action for injury, damage or death. "Failure to give the notice [required by that statute] is fatal to the action." *Ibrahim v. Samore,* 118 Wis. 2d 720, 726, 348 N.W.2d 554, 557 (1984). Compliance with a notice of claim statute must be pleaded to state a claim. *Yotvat v. Roth,* 95 Wis. 2d 357, 360, 290 N.W.2d 524, 527 (Ct. App. 1980). We conclude that Casteel has failed to state a claim under state law for damages.

Whether Casteel's complaint states a claim under Wisconsin law for the declaratory relief or injunction is another matter. Section 893.82(3), Stats., requires notice of claim within 120 days of the event causing "the injury, damage or death giving rise to the civil action or civil proceeding." Casteel's claims for declaratory and injunctive relief do not arise out of injury, damages or death. For that reason, his failure to allege compliance with sec. 893.82(3) has no effect on his claim for declaratory relief and an injunction.

An administrative remedy which is available to a party on his initiative, is relatively rapid, and will protect the parties claim of right should be used before proceeding to court. *Nodell Inv. Corp. v. City of Glendale,* 78 Wis. 2d 416, 424, 254 N.W.2d 310, 315 (1977). When administrative relief has not been pursued, as here, the exhaustion of administrative remedies doctrine bars judicial action. *Id.*

The department of corrections has in place an Inmate Complaint Review System (ICRS). The ICRS

exists to "allow inmates to raise, in an orderly fashion, questions regarding rules, living conditions, and staff actions affecting institution living." Wisconsin Adm. Code sec. DOC 310.01(2)(a). With exceptions not pertinent to this case, the ICRS may be used to seek a change of any institutional policy or practice. Wisconsin Adm. Code sec. DOC 310.04(2). The doctrine of exhaustion of administrative remedies "provides state agencies with the opportunity to correct their own errors and prevents premature judicial incursions into agency activities. In addition, the doctrine of exhaustion promotes judicial efficiency. Conflicts often are resolved without resort to litigation." *Kramer v. Horton,* 128 Wis. 2d 404, 418, 383 N.W.2d 54, 59, *cert. denied,* 479 U.S. 918 (1986).

The department of corrections should be given an opportunity to correct whatever errors have or are continuing to occur with respect to TLU practices before Casteel may seek declaratory relief or an injunction from the courts. We conclude that because he failed to allege that he exhausted his remedy under the ICRS, his complaint does not state a claim for declaratory or injunctive relief.

*By the Court.*—Order affirmed in part; reversed in part and remanded for further proceedings.