John A. CASTEEL, a/k/a Tayr Kilaab Al Ghashiyah (Khan), Plaintiff-Appellant,

v.

Gary R. MCCAUGHTRY, Thomas Borten, Thomas Gozinske, William Lackey, Frank Mesa, Dan Pashke, Timothy Morris, Ray Fromolz and Thomas Nickel, Defendants-Respondents-Petitioners.

Supreme Court

*No. 91–0218. Oral argument March 30, 1993.—Decided June 3, 1993.*

(Also reported in 500 N.W.2d 277.)

571

For the defendants-respondents-petitioners the cause was argued by *Joanne F. Kloppenburg*, assistant attorney general with whom on the briefs was *James E. Doyle*, attorney general.

For the plaintiff-appellant there was a brief and oral argument by *Martha K. Askins*, assistant state public defender.

Amicus Curiae brief was filed by *Bruce Meredith*, staff counsel and *Mary E. Pitassi*, associate counsel for the Wisconsin Education Association Council.

WILLIAM A. BABLITCH, J.   John Casteel (Casteel), an inmate at the Waupun Correctional Institution (Waupun), brought an action in the circuit court pursuant to 42 U.S.C. sec. 1983 and the law of Wisconsin alleging that the defendants, the warden and the security director at Waupun and several Waupun employees (referred to collectively as

McCaughtry), violated his rights in transferring him to temporary lockup (TLU) status in violation of Wisconsin Administrative Code regulations. The defendants seek review of the court of appeals' decision which held that Wisconsin Administrative Code sec. DOC 303.11 provides Wisconsin inmates, for purposes of the Fourteenth Amendment to the United States Constitution, a liberty interest in remaining out of and getting out of TLU. The court of appeals also concluded that Casteel's failure to file with the state a notice of claim pursuant to sec. 893.82, Stats., does not bar his state law claim for declaratory relief and an injunction.

Because Wis. Adm. Code sec. DOC 303.11 does not impose a substantive limitation on official discretion by mandating the outcome of an official's decision upon a finding that relevant criteria have been met, it does not create a liberty interest protected under the Fourteenth Amendment. Thus, we reverse the decision of the court of appeals on that issue and hold that Casteel fails to state a sec. 1983 claim upon which relief can be granted. However, we agree with the court of appeals' conclusion that Casteel's failure to file a notice of claim with the state pursuant to sec. 893.82, Stats., does not bar his state law claim for declaratory relief and an injunction. Accordingly, the decision of the court of appeals is affirmed in part and reversed in part.

The relevant facts are undisputed. In June 1990, Casteel filed a complaint in Dane County Circuit Court seeking declaratory, injunctive and monetary relief for the alleged deprivation of his liberty without due process and assorted violations of federal and state law. Casteel alleged that on six occasions between March 1985 and January 1990, he was removed from the general prison population and placed in TLU. Wisconsin Adm. Code sec. DOC 303.11, set forth in full below,

governs TLU.[1] On each occasion, Casteel alleges Wis.

[1] Wisconsin Adm. Code sec. DOC 303.11 provides: Temporary lockup: use.

(1) An inmate may be placed in temporary lockup (TLU) by a security supervisor, security director, or superintendent.

(2) If the inmate is placed in temporary lockup by a security supervisor, the security director shall review this action on the next working day. Before this review and the review provided for in sub. (3), the inmate shall be provided with the reason for confinement in TLU and with an opportunity to respond, either orally or in writing. Review of the decision must include consideration of the inmate's response to the confinement. If, upon review, it is determined that TLU is not appropriate, the inmate shall be released from TLU immediately.

(3) No inmate may remain in TLU more than 21 days, except that the superintendent, without notice to the division administrator, may extend this period for up to 21 additional days for cause. The security director shall review the status of each inmate in TLU every 7 days to determine whether TLU continues to be appropriate. If upon review it is determined the TLU is not appropriate, the inmate shall be released from TLU immediately.

(4) An inmate may be placed in TLU and kept there only if the decision maker is satisfied that it is more likely than not that one or more of the following is true:

(a) If the inmate remains in the general population, the inmate will seek to intimidate a witness in a pending investigation or disciplinary action;

(b) If the inmate remains in the general population, he or she will encourage other inmates by example, expressly, or by their presence, to defy staff authority and thereby erode staff's ability to control a particular situation;

(c) If the inmate remains in the general population, it will create a substantial danger to the physical safety of the inmate or another;

(d) If the inmate remains in the general population, it will create a substantial danger that the inmate will try to escape from the institution; or

(e) If the inmate remains in the general population, a disciplinary investigation will thereby be inhibited.

(5) When an inmate is placed in TLU, the person who does so shall state the reasons on the appropriate form and shall include the facts upon which the decision is based. The inmate shall be

Adm. Code sec. 303.11 was violated, in that he was not served with a conduct report before being placed in TLU, was not given a hearing on whether TLU was appropriate (sub. (2)), was not given an opportunity to respond as to why TLU was unnecessary, was not given the reasons for the TLU placement or the facts for the decision (subs. (2) and (5)), the security director did not review his TLU placement on the following work day (sub. (2)), and the defendants failed to properly review his TLU status every seven days (sub. (3)). Specifically, Casteel's complaint sought a declaratory judgment that the practices complained of were illegal and unconstitutional, a permanent injunction preventing the defendants from continuing those practices and damages.

McCaughtry moved to dismiss the entire complaint. The circuit court granted the motion concluding that dismissal was appropriate because Casteel failed to allege that he had exhausted his available administrative remedies under the Inmate Complaint Review System, Wis. Adm. Code sec. DOC 310 (ICRS). In a published decision, the court of appeals reversed in

given a copy of the form. Upon review, the security director shall approve or disapprove the TLU on the form.

(6) Conditions in TLU shall, insofar as feasible, be the same as those in the status from which the inmate came prior to TLU placement. An inmate who had been earning compensation shall continue to be compensated at the rate earned in his or her previous status, except that an inmate employed by corrections industries shall be compensated in accordance with s. DOC 313.08. If 1983 Wis. Act 528 does not apply to the inmate, he or she shall continue to earn extra good time credit. The inmate may be required to wear mechanical restraints, as defined in s. DOC 306.09(1), while outside the cell if the superintendent or designee determines that the use of mechanical restraints is necessary to protect staff or inmates or to maintain the security of the institution.

part and affirmed in part, holding first that Casteel's failure to allege his compliance with the state notice of claim statute, sec. 893.82(3), Stats., bars his right to bring an action against McCaughtry for damages under state law. However, the court concluded that his failure to allege compliance with sec. 893.82(3) does not bar his state law claim for declaratory relief and an injunction. Notwithstanding, the court upheld the dismissal of his claims for declaratory and injunctive relief because Casteel failed to allege that he exhausted his administrative remedies under the ICRS. Lastly, the court of appeals concluded that Casteel's complaint states a claim under sec. 1983 because Wis. Adm. Code sec. DOC 303.11 creates a liberty interest in remaining out of and getting out of TLU, and recent Wisconsin Supreme Court case law indicates that exhaustion of administrative remedies is unnecessary to state a sec. 1983 claim. *See Casteel v. Vaade,* 167 Wis. 2d 1, 5, 481 N.W.2d 277 (1992) ("plaintiff need not exhaust his administrative remedies before bringing . . . sec. 1983 action in state court.") We granted McCaughtry's petition for review of the following issues:

> 1   Did the court of appeals correctly find that Wis. Admin. Code § DOC 303.11 creates a liberty interest protected by the fourteenth amendment . . .?
>
> 2   Did the court of appeals properly find that the plaintiff's claims for declaratory and injunctive relief . . . are not subject to the requirements of the notice of claims statute, sec. 893.82(3), Stats.?

We address each issue in turn below.

## I.

This case arises from the circuit court's dismissal of Casteel's complaint for failure to state a claim upon which relief can be granted. For purposes of determining whether a complaint should be dismissed, " 'the facts pleaded and all reasonable inferences from the pleadings must be taken as true.' " *State v. American TV,* 146 Wis. 2d 292, 300, 430 N.W.2d 709 (1988) (citation omitted). "The motion to dismiss tests the legal sufficiency of the complaint. The claim is dismissed only when 'it is quite clear that under no conditions can the plaintiff recover.' " *Id.* (citation omitted). Whether Casteel's complaint states a sec. 1983 claim upon which relief can be granted turns upon whether Casteel alleges the deprivation of any constitutionally protected liberty interest as required to state a Fourteenth Amendment claim under 42 U.S.C. sec. 1983.

The Fourteenth Amendment to the United States Constitution provides in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." Three kinds of sec. 1983 claims may be brought against the state under the Due Process Clause: (1) Plaintiffs may bring suit under sec. 1983 for state officials' violations of their rights under a specific protection in the Bill of Rights; (2) The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions, (these are commonly known as substantive due process rights); (3) An action may be brought under sec. 1983 for a violation of procedural due process. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990). The issue before this court concerns only an alleged violation of Casteel's procedural due process rights.

578

" 'In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*' " *Id.* (citation omitted). The United States Supreme Court in *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460 (1989) (citations omitted), explained that procedural due process questions are examined in two steps: "the first asks whether there exists a liberty . . . interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Thus, we must first determine whether Casteel has been deprived of a protected liberty interest. If such a deprivation occurred, we reach the second step of the analysis.

"Protected liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.' " *Id.* At issue in this case is whether Wis. Adm. Code sec. DOC 303.11, as a law of the state, provides Wisconsin inmates, for purposes of the Fourteenth Amendment, a liberty interest in remaining out of and getting out of TLU.

According to the United States Supreme Court in *Thompson,* the method of inquiry for determining whether a state statute or regulation creates an enforceable liberty interest is to "examine closely the language of the relevant statutes and regulations" to ascertain whether the State has established " 'substantive predicates' to govern official decisionmaking . . ." and further whether the statute or regulation mandates "the outcome to be reached upon a finding that the relevant criteria have been met." *Thompson,* 490 U.S. at 461–62. This inquiry was also described in

*Thompson* as a requirement that "the regulations contain 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Id.* at 463.

McCaughtry urges us to follow the Seventh Circuit Court of Appeals' opinion in *Russ v. Young,* 895 F.2d 1149 (7th Cir. 1990); a case in which the Seventh Circuit applied the *Thompson* analysis to Wisconsin's TLU regulation. In *Russ,* the Seventh Circuit concluded that Wisconsin's TLU regulation "does not place such substantive limits on official discretion sufficient to establish a prisoner's liberty interest in staying out of TLU." *Id.* at 1153. As support for this contention, the court pointed out that the "language of the regulation employs discretionary rather than the *'unmistakenly* mandatory' language required . . . ." *Id.* at 1153. In particular, the court emphasized that the regulation states that an inmate *may* be placed in TLU, "and thus, in context, merely provides procedural guidelines permitting, but not mandating, the placement of an inmate in TLU." *Id.*

Moreover, the *Russ* court noted that the Wisconsin regulation allows removal from the general population if the charging officer subjectively believes that it is more likely than not that any of the criteria set forth in the regulation are met, regardless of whether in fact the criteria are actually met. Thus, according to the court, prisoners rights are "in no way dependent on the realities of the situation, but only upon the perceptions of the officers," *Id.* at 1154, and thus no substantive limitation is placed upon the official's discretion as required to create a liberty interest.

Casteel contends that we should not rely on *Russ* in reaching our conclusion because its reasoning has

been subsequently questioned by the Seventh Circuit in *Smith v. Shettle,* 946 F.2d 1250 (7th Cir. 1991). Specifically, Casteel contends that *Smith* explicitly rejects the notion that a statute which permits, but does not require administrative segregation or some other deprivation, is insufficiently "mandatory" to create a protected liberty interest. Casteel argues that in so holding, the *Smith* court cited *Russ v. Young* as a case that had erroneously suggested otherwise. In addition, Casteel contends that *Smith* similarly rejects the notion that statutes which contain words such as "shall" or "must" are the hallmarks of liberty creating statutes. According to Casteel, the *Smith* court held that " 'explicitly mandatory language', in the sense of words that are in the imperative mood as a matter of grammar is not a sine qua non of entitlement . . . ." *Id.* at 1253.

We agree with Casteel that some tension exists between the reasoning in *Russ* and the reasoning in *Smith.* In particular, we agree with Casteel that the opinions are at odds concerning the effect of a statute's failure to require but rather only permit segregation. We are not bound by either opinion, however, we agree with the *Smith* court that for purposes of determining whether a liberty interest is created by a given regulation it makes no difference that the statute does not *require* but only permits segregation:

> It . . . makes no difference . . . that the statute does not *require* but only permits segregation—most statutes leave discretion to the persons charged with their enforcement rather than commanding them to enforce the statute to the hilt—this is the famous 'prosecutorial discretion . . . .' *Smith,* 946 F.2d at 1253.

581

This conclusion is supported by the United States Supreme Court's decision in *Hewitt v. Helms,* 459 U.S. 460 (1983). In *Hewitt,* the regulation at issue provided that " '[a]n inmate *may* be temporarily confined to Close or Maximum Administrative Custody . . . where it has been determined that there is a threat of serious disturbance, or a serious threat to the individual or others.' " *Hewitt,* 459 U.S. at 470–71 n.6 (Emphasis added). Despite the fact that the regulation permitted, but did not require, that a prisoner be temporarily confined, the United States Supreme Court concluded that because the statute mandated that administrative segregation *will not* occur absent specified substantive predicates, it created a protected liberty interest.

■ Thus, we reject that portion of the *Russ* court's analysis of Wisconsin's TLU regulation that concludes that because the regulation states that an inmate "may" be placed in TLU, the regulation lacks the mandatory language necessary to create a liberty interest. However, rejecting this portion of *Russ* is not to say that we reject the opinion in its entirety. On the contrary, we agree with its ultimate conclusion, and hold that, unlike the regulation in *Hewitt,* sec. DOC 303.11 does not impose a substantive limitation on official discretion by mandating the outcome of the official's decision upon a finding that relative criteria have been met, and thus it does not create a liberty interest under the Fourteenth Amendment.

Wisconsin Administrative Code sec. DOC 303.11(4) preserves a prison official's discretion by providing that an official need only be "satisfied that it is more likely than not" that certain substantive predicates are met before placing an inmate in TLU. Thus, sec. DOC 303.11 does not mandate a particular result

even if the facts show that the criteria set forth in sec. DOC 303.11(4)(a) through (e) are or are not present. Rather, the outcome is dependent upon the officer's subjective beliefs concerning the presence or absence of the relevant criteria; it is not dependent upon the realties of the situation. As the Seventh Circuit explained in *Russ,* 895 F.2d at 1153–54:

> [T]he regulation allows removal from the general population if the charging officer subjectively believes that it is more likely than not that any of the criteria set forth . . . are met, regardless of whether in fact the criteria are actually met—the regulation does not make the inmate's remaining in the general prison population dependent on the prisoner's own good behavior. We do not agree that somehow the requirement that the officer be satisfied places a substantive limitation on his discretion. The convict does not have a substantive right requiring that the security officer ordering the confinement hold a particular subjective belief, as the regulation does not require that the decisionmakers' subjective beliefs be well founded in fact. . . . Russ' 'rights' were in no way dependent on the realities of the situation, but only upon the perceptions of the officers.

We find this application of the *Thompson* analysis persuasive and consistent with the United States Supreme Court's opinion in *Hewitt.* As noted earlier in this opinion, in *Hewitt,* the regulation required that the correction official have "*determined* that there *is* a threat of a serious disturbance . . ." before an administrative confinement placement was permitted. *Hewitt,* 459 U.S. at 470 n.6. Thus, the regulation mandated that administrative segregation will not occur absent the specified substantive predicates. Wisconsin's TLU

regulation's requirement that an officer be satisfied that it is more likely than not that certain criteria are met, unlike the regulation in Hewitt, does not place such substantive limitations on official discretion. Under sec. DOC 303.11, prisoner's rights are "in no way dependent on the realities of the situation, but only upon the perceptions of the officers." *Russ,* 895 F.2d at 1154. Thus, sec. DOC 303.11 does not create a liberty interest protected under the Fourteenth Amendment, and accordingly Casteel's sec. 1983 claim fails to state a claim upon which relief can be granted.

## II.

■

We now turn to the issue of whether Casteel's failure to file with the state a notice of claim pursuant to sec. 893.82(3), Stats., bars his state law claim for declaratory relief and an injunction.

Section 893.82(3) provides:

> [N]o civil action or civil proceeding may be brought against any state officer, employe or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employe's or agent's duties . . . unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employe or agent involved.

The court of appeals concluded that sec. 893.82(3) does not apply to claims for injunctive and declaratory relief. It reasoned as follows:

> Section 893.82(3), requires notice of claim within 120 days of the event causing 'the injury, damage or death giving rise to the civil action or civil proceeding . . .' Casteel's claims for declaratory and injunctive relief do not arise out of injury, damages or death. For that reason, his failure to allege compliance with sec. 893.82(3) has no effect on his claim for declaratory relief and an injunction.

We agree with the court of appeals and adopt its analysis as our own. As Casteel persuasively explains in his brief:

> Section 893.82(2)(c) defines 'damage and injury' as 'any damage or injury of any nature which is caused or allegedly caused by the event.' Section 893.82(2)(c) requires the filing of a notice of claim within a certain number of days of the event causing the injury or damage. Thus, the statute relates back to a previous event causing injury or damage for which the plaintiff seeks to recover by bringing a civil action. The focus of the statute is retrospective: it seeks recovery for past harm.
> Declaratory and injunctive relief, however, are designed to prevent future harm; their focus is prospective. To that extent, these claims 'do not arise out of injury, damages or death. . . .'

We conclude that Casteel's claims for declaratory relief and an injunction are not barred by his failure to file a notice of claim with the state pursuant to sec. 893.82(2). However, we note that we agree with Amicus Curiae, Wisconsin Education Association Council, that there may be cases where a damage claim is disguised as an action in equity where the primary

purpose of the suit is to seek monetary relief, rather than to stop an alleged unlawful governmental action. In such cases, notice of claim pursuant to sec. 893.82(2) may be required.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

SHIRLEY S. ABRAHAMSON, J. *(concurring in part and dissenting in part).* I would affirm the decision of the court of appeals, *Casteel v. McCaughtry,* 168 Wis. 2d 758, 484 N.W.2d 579 (1992), holding (1) that Casteel stated a claim under sec. 1983; (2) that Casteel failed to state a claim under state law for damages because he failed to give notice; and (3) that Casteel failed to state a claim for declaratory or injunctive relief under state law because he failed to exhaust his remedies.

I agree with the court of appeals that the administrative code creates a constitutionally protected liberty interest and that the complaint asserts that Casteel was not provided the process that was due him under the code. I therefore conclude, as did the court of appeals, that Casteel's complaint states a cause of action under sec. 1983 for violation of procedural due process.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN joins this opinion.