Ame AICHER, minor, by her Guardian ad Litem, Gerald LaBarge, Esq. and Kathy Goelz, mother of Ame Aicher, Plaintiffs-Respondents,

v.

WISCONSIN PATIENTS COMPENSATION FUND and Wisconsin Health Care Liability Insurance Plan, Defendants-Appellants,

PRIMECARE HEALTH PLAN, INC. and Waukesha County Department of Health and Social Services, Defendants.

Supreme Court

*No. 98–2955. Oral argument May 25, 2000.—Decided July 12, 2000.*

2000 WI 98

(Also reported in 613 N.W.2d 849.)

For defendants-appellants there were briefs by *Michael P. Russart* and *Hinshaw & Culbertson*, Milwaukee, and oral argument by *Michael P. Russart*.

For plaintiffs-respondents there was a brief (in the court of appeals) by *Timothy J. Aiken, James C. Gallanis* and *Aiken & Scoptur, S.C.*, Milwaukee, and oral argument by *Timothy J. Aiken*.

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (1993–94).[1] Wisconsin Patients Compensation Fund and Wisconsin Health Care Liability Insurance Plan (Insurers) seek review of a decision of the Waukesha County Circuit Court, James R. Kieffer, Judge. The circuit court denied the Insurers' motion for summary judgment in a medical malpractice action filed on behalf of Ame Aicher by her Guardian ad Litem (Aicher).

¶ 2. Aicher alleged that she became blind in her right eye as a result of medical malpractice committed during her newborn examination on December 10, 1982. Aicher maintains that she did not discover the condition until September 10, 1993, after she reached her tenth birthday. Aicher initiated this action in 1996, when she was 13 years old.

¶ 3. The Insurers filed a motion to dismiss and then sought summary judgment, invoking Wis. Stat. §§ 893.55(1)(b)[2] and 893.56.[3] Section 893.55(1)(b) establishes a statute of limitations for medical mal-

---

[1] All references to the Wisconsin Statutes are to the 1993–94 volumes unless indicated otherwise.

[2] Wisconsin Stat. § 893.55(1) provides:

**Medical malpractice; limitation of actions; limitation of damages; itemization of damages.** (1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

practice actions of one year from the date of discovery of the injury. The provision also operates as a statute of repose, tolling at five years from the date of the act or omission. Section 893.56, another statute of repose, extends the time for minors to initiate medical malpractice claims to the tenth birthday.

¶ 4. The circuit court denied the summary judgment motion, holding that the statutes of repose were unconstitutional as applied to the factual circumstances of Aicher's case. The court relied on *Estate of Makos v. Wisconsin Health Care Fund*, 211 Wis. 2d 41, 564 N.W.2d 662 (1997), in which the court's lead opinion found Wis. Stat. § 893.55(1)(b) unconstitutional. The circuit court held that §§ 893.55(1)(b) and 893.56 violate procedural due process and the right to remedy because the statutes foreclose some claims before a plaintiff even has the opportunity to know that an injury occurred. The court observed that the statutes

---

Section 893.55(1)(a) is not at issue in this case. Wisconsin Stat. § 893.55(1) provides that a person may file within the later time period of either subsection (a) or (b). The Insurers did not allege that § 893.55(1)(a) precluded Aicher's claim. As explained below, Aicher's injury accrued when she was six months old, and § 893.55(1)(a), read alone, would have tolled when she was three years and six months old. Sections 893.55(2) and (3) are not at issue in this case.

[3] Wisconsin Stat. § 893.56 states:

**Health care providers; minors actions**. Any person under the age of 18, who is not under disability by reason of insanity, developmental disability or imprisonment, shall bring an action to recover damages for injuries to the person arising from any treatment or operation performed by, or for any omission by a health care provider within the time limitation under s. 893.55 or by the time that person reaches the age of 10 years, whichever is later. That action shall be brought by the parent, guardian or other person having custody of the minor within the time limit set forth in this section.

gave Aicher zero days to file her action and thereby denied her an opportunity to be heard in court.

¶ 5. The Insurers appealed. The court of appeals certified two issues to this court: (1) Does the *Makos* plurality opinion represent a consensus of the majority of the justices that is binding on the courts of this state? (2) If Wis. Stat. § 893.55(1)(b) is considered unconstitutional under *Makos*, can the time limitation for the discovery of a medical malpractice injury be severed from the repose portion of the statute?

¶ 6. We do not answer the first question certified by the court of appeals because our decision today expressly overrules *Makos*. We hold that Wis. Stat. §§ 893.55(1)(b) and 893.56 are constitutional for three reasons. First, the statutes do not violate the right-to-remedy provision of the Wisconsin Constitution. Second, §§ 893.55(1)(b) and 893.56 do not offend equal protection because the classification of minor medical malpractice claimants is related rationally to the legitimate legislative objectives of reducing health care costs. Third, the statutes do not violate Aicher's right to procedural due process because an unaccrued cause of action is not a property interest. Because we sustain the constitutionality of Wis. Stat. §§ 893.55(1)(b) and 893.56, we do not reach the second certified question. Accordingly, we hold that §§ 893.55(1)(b) and 893.56 preclude Aicher's cause of action, and we reverse the decision of the circuit court.

## FACTS

¶ 7. Most of the relevant facts are not in dispute. On September 10, 1993, when Aicher was three months shy of her eleventh birthday, she underwent a routine eye examination in anticipation of her transfer to a new school. The examination revealed that she had

an untreatable cataract in her right eye that caused permanent blindness. The cataract appeared because a muscle in her right eye failed to develop properly as a result of a condition known as "poor red reflex." A physician told Aicher's mother that if the condition had been treated within six months after Aicher's birth, the problem would have been correctable. The parties do not dispute that the condition resulted in an injury during the first six months of Aicher's life. Aicher is now blind in her right eye.

¶ 8. Aicher was born on December 10, 1982. Dr. Beryl Harris, who performed Aicher's newborn examination, made a notation in her medical record that she had "poor red reflex on the right eye." Aicher contends that Dr. Harris conducted no follow-up treatment for the eye condition, and he never spoke with Aicher's mother about further testing or treatment. Aicher's mother testified at her deposition that Aicher had a red spot in her eye since birth. Aicher displayed several instances of unexplained clumsiness in her childhood. She fell a few times and split her chin open twice. After these incidents, neither the treating doctors nor hospitals suggested to Aicher's mother that anything was wrong with Aicher's vision. There is no evidence that Aicher's mother sought medical attention to uncover the cause of these episodes. In addition, Aicher testified that she cheated during some of her eye examinations in school by looking at the eye chart with her good eye when her right eye was being tested. Dr. Harris died on April 26, 1986, ten years before Aicher sought recovery in this action.

## PROCEDURAL HISTORY

¶ 9. Aicher initiated this claim on April 30, 1996, alleging that Dr. Harris committed malpractice when

he performed her newborn examination. The Insurers initially filed a motion to dismiss, arguing that Wis. Stat. §§ 893.55 and 893.56 bar Aicher's action.

¶ 10. Wisconsin Stat. §§ 893.55(1)(b) and 893.56 set forth the statutes of repose at issue in this case. Section 893.55(1)(b) provides that a medical malpractice claim must be filed within one year of the date of discovery of the injury (the one-year-after-discovery statute of limitations), provided that five years have not passed since the act or omission (the five-year statute of repose).[4] Section 893.56 extends the filing time for minors pursuing medical malpractice claims, allowing recovery if the minor initiates the lawsuit before reaching the age of 10 (the 10-year statute of repose for minors).

¶ 11. The interplay between both statutes of repose operated to preclude this suit. Under the broader provisions of Wis. Stat. § 893.56, Aicher would have had to file the malpractice claim by her tenth birthday, roughly nine months before she claims to have discovered her condition. When governed only by

---

[4] Two types of medical malpractice claims are exempted from these limitations. Wisconsin Stat. § 893.55(2) provides:

> If a health care provider conceals from a patient a prior act or omission of the provider which has resulted in injury to the patient, an action shall be commenced within one year from the date the patient discovers the concealment or, in the exercise of reasonable diligence, should have discovered the concealment or within the time limitation provided by sub. (1), whichever is later.

Wisconsin Stat. § 893.55(3) states:

> When a foreign object which has no therapeutic or diagnostic purpose or effect has been left in a patient's body, an action shall be commenced within one year after the patient is aware or, in the exercise of reasonable care, should have been aware of the presence of the object or within the time limitation provided by sub. (1), whichever is later.

Wis. Stat. § 893.55(1)(b), Aicher's action tolled when she was five years old, or just under six years before the discovery. This time line illustrates the critical dates in this action:

December 10, 1982: Aicher born.

December 10, 1982: Dr. Harris performed the newborn examination.

June 10, 1982: End of six-month period during which Aicher's injury accrued.

June 9, 1985: Tolling date for Wis. Stat. § 893.55(1)(a), under which plaintiffs file no later than three years from the date of injury.

December 9, 1987: Tolling date for Wis. Stat. § 893.55(1)(b), the five-year statute of repose, that precludes actions brought "more than 5 years from the date of the act or omission."

December 10, 1992: Aicher turns 10 and Wis. Stat. § 893.56, the ten-year statute of repose for minors, bars her claim.

September 10, 1993: Aicher discovers the injury.

September 9, 1994: If the one-year-after-discovery statute of limitation set forth in Wis. Stat. § 893.55(1)(b) were severable from the § 893.55(1)(b) five-year statute of repose, this is tolling date for filing suit.

April 30, 1996: Aicher files this action.

¶ 12. After the Insurers filed the motion to dismiss, this court decided *Makos*, 211 Wis. 2d 41, a case that addressed the constitutionality of Wis. Stat. § 893.55(1)(b). The Insurers sought summary judgment, maintaining that "the fractured majority" of *Makos* found § 893.55(1)(b) unconstitutional only as to the particular facts of that case.

¶ 13. The circuit court, relying on the lead opinion in *Makos*, denied the summary judgment motion. The court held that §§ 893.55(1)(b) and 893.56 were unconstitutional when applied to the unique factual circumstances of Aicher's case. The court reasoned that the statutes violated procedural due process by denying. Aicher an opportunity to be heard "because the doors of the courtroom were closed before she even discovered she was injured." The court likened Aicher to the claimant in *Makos*, concluding that it was fundamentally unfair to allow the statute to toll on a claim before the plaintiff knew or could have known about the injury. The circuit court found that granting summary judgment was inappropriate because the case presented a question of fact for the jury, namely whether Aicher should have discovered her injury before her tenth birthday.[5]

¶ 14. The circuit court also held that Wis. Stat. §§ 893.55(1)(b) and 893.56 were unconstitutional because they violated the "right to remedy" clause of art. I, § 9 of the Wisconsin Constitution, a provision that "guarantees that every person shall be afforded a

---

[5] As we explain below in ¶¶ 29–30, a minor has an absolute right to file a medical malpractice claim before the age of 10 years. Wisconsin Stat. § 893.56, read alone, contains no discovery provision.

remedy for wrongs committed against his or her person, property or character." Noting that the right-to-remedy provision "entitles Wisconsin residents to their day in court," the court concluded that the statutes deprived Aicher of a remedy for a wrong that she did not and could not discover.

¶ 15. The circuit court declined to address Aicher's argument that the two statutes violated her equal protection and substantive due process rights, because it had found the statutes unconstitutional on the grounds of procedural due process and the right-to-remedy clause.

¶ 16. The court of appeals certified the Insurers' appeal to this court, highlighting the disputed interpretations generated by *Makos*. The court suggested that "[t]his appeal is the appropriate case for the Wisconsin Supreme Court to fashion guidelines" about the precedential value of plurality opinions. In addition, the court of appeals asked this court to address whether the five-year statute of repose in Wis. Stat. § 893.55(1)(b), if unconstitutional, can be severed from the one-year-after-discovery statute of limitations for filing a medical malpractice claim.

## STANDARD OF REVIEW

¶ 17. Although this case comes before the court as the result of a summary judgment decision, the issue we address requires us to determine the constitutionality of two statutes.

¶ 18. The constitutionality of a statute is a question of law that we review *de novo*. *Riccitelli v. Broekhuizen*, 227 Wis. 2d 100, 119, 595 N.W.2d 392 (1999). Statutes are presumptively constitutional. *Id.* The court indulges every presumption to sustain the

law if at all possible, and if any doubt exists about a statute's constitutionality, we must resolve that doubt in favor of constitutionality. *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46–47, 205 N.W.2d 784 (1973).

¶ 19. To overcome this strong presumption, the party challenging a statute's constitutionality must demonstrate that the statute is unconstitutional beyond a reasonable doubt. *State v. Hezzie R.*, 219 Wis. 2d 848, 863, 580 N.W.2d 660 (1998). It is not sufficient for the challenging party merely to establish doubt about a statute's constitutionality, and it is not enough to establish that a statute probably is unconstitutional. *Hammermill Paper Co.*, 58 Wis. 2d at 46–47.

¶ 20. The presumption of statutory constitutionality is the product of our recognition that the judiciary is not positioned to make the economic, social, and political decisions that fall within the province of the legislature. *See State ex rel. Carnation Milk Prods. Co. v. Emery*, 178 Wis. 147, 160, 189 N.W. 564 (1922). The duty of the court is only to determine if the legislation clearly and beyond doubt offends a provision of the state constitution that specifically circumscribes legislative action. *Hammermill Paper Co.*, 58 Wis. 2d at 46–47; *Chicago & N.W. Ry. Co. v. La Follette*, 27 Wis. 2d 505, 521, 135 N.W.2d 269 (1965).

¶ 21. Under this standard of review, we recognize that statutes of limitation are policy considerations best suited to the legislative branch of government. *See Tomczak v. Bailey*, 218 Wis. 2d 245, 253–54, 578 N.W.2d 166 (1998). We also acknowledge that the legislature was aware of the policy issues underpinning medical malpractice actions when it

enacted these statutes. *Miller v. Kretz*, 191 Wis. 2d 573, 580, 531 N.W.2d 93 (Ct. App. 1995) (citation omitted).

## BACKGROUND

¶ 22. In 1975 the Wisconsin Legislature enacted a series of statutes governing the procedures for bringing medical malpractice actions. Ch. 37, Laws of 1975. These statutes targeted:

> [A] sudden increase in the number of malpractice suits, in the size of awards, and in malpractice insurance premiums, and identified several impending dangers: increased health care costs, the prescription of elaborate "defensive" medical procedures, the unavailability of certain hazardous services and the possibility that physicians would curtail their practices.

*State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 508, 261 N.W.2d 434 (1978). Two years later, the legislature addressed medical malpractice actions brought by minors. Ch. 390, Laws of 1977. The legislature found that the number of suits and damages arising from medical malpractice actions commenced by minor claimants had "increased tremendously." *Id.* at § 1(a). These increases led to higher insurance premiums for health care providers and resulted in higher charges to consumers for health care services and facilities. *Id.* at § 1(c). The legislature concluded that the interests of minor children could be protected adequately by requiring children to initiate medical malpractice suits in the same time limitation as adults, "except in the case of very young children." *Id.* at § 1(d). To that end, the legislature decided that the interests of very young children could be "fully protected by extending the time limits in which actions may be brought to age 10." *Id.* at

§ 1(e). These legislative findings supported the passage of what is now Wis. Stat. § 893.56:[6]

**Health care providers; minors actions.** Any person under the age of 18, who is not under disability by reason of insanity, developmental disability or imprisonment, shall bring an action to recover damages for injuries to the person arising from any treatment or operation performed by, or for any omission by a health care provider within the time limitation under s. 893.55 or by the time that person reaches the age of 10 years, whichever is later. That action shall be brought by the parent, guardian or other person having custody of the minor within the time limit set forth in this section.

¶ 23. In 1979 the legislature undertook a general revision of the statutes of limitations. Ch. 323, Laws of 1979. These revisions were in part a response to this court's admonitions to the legislature that the existing time limitation periods for medical malpractice actions were too short. *Claypool v. Levin*, 209 Wis. 2d 284, 292–93, 562 N.W.2d 584 (1997).

¶ 24. Before the law took effect, medical malpractice claimants were required to file suit within three years of the injury. *Id.* At that time the legislature did not recognize a "discovery rule" that otherwise establishes the time limitation period for commencing an action based on the date on which a claimant discovered the injury. After encountering several cases in which the three-year rule precluded relief before a plaintiff discovered the injury, this court urged the leg-

[6] Wisconsin Stat. § 893.56 originally was enacted as Wis. Stat. § 893.235 as a result of 1977 Assembly Bill 705. *See* Ch. 390, Laws of 1977. Effective July 1, 1980, it was renumbered as Wis. Stat. § 893.56. *See* Ch. 323, Laws of 1979.

islature to amend the medical malpractice statute of limitations:

> We conclude that this is a matter peculiarly for legislative determination. Because of the numerous cases in which the present three-year requirement for commencing an action by a party who is the victim of medical malpractice is too short, we strongly recommend to the legislature that the basic three-year statute for negligence actions due to medical malpractice be amended.

*Id.* at 292 n.2 (quoting *Peterson v. Roloff*, 57 Wis. 2d 1, 6, 203 N.W.2d 699 (1973), *rev'd on other grounds, Hansen v. A.H. Robbins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983)).

¶ 25. The legislature followed our recommendation and created Wis. Stat. § 893.55,[7] which states, in part:

---

[7] As we noted in *Claypool v. Levin*, 209 Wis. 2d 284, 293 n.3, 562 N.W.2d 584 (1997):

The drafting record for this law reveals that the medical malpractice section was designed to address the outcome of "Olson v. St. Croix." *See Olson*, 55 Wis. 2d 628, 201 N.W.2d 63 (1972).

In *Olson*, the plaintiff alleged that she was given the wrong type of blood in a blood transfusion that she received in 1962. *Olson*, 55 Wis. 2d at 630. On December 1, 1966, the plaintiff gave birth to a child that died seven hours later. *Id.* On December 9, 1969, she delivered a stillborn child. *Id.* The plaintiff alleged that the deaths of the children were the result of negligence by the hospital and that she did not discover that the wrong type of blood had been given to her until the still birth of the second child. *Id.* at 630–31. The relevant statute of limitations provided that the action must be brought within three years of the injury. *Id.* at 631. This court first concluded that the alleged injury occurred at the time of the blood transfusion. *Id.* at 632–33. The court then declined to adopt the discovery and thus held that suit was barred by the statute of limitations. *Id.* at 633–34.

114

**Medical malpractice; limitation of actions; limitation of damages; itemization of damages. (1)** Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

■
¶ 26. Wisconsin Stat. §§ 893.55(1) and 893.56 both set forth statutes of repose. Statutes of repose are different from statutes of limitations. A statute of limitations usually establishes the time frame within which a claim must be initiated after a cause of action actually accrues. A statute of repose, by contrast, limits the time period within which an action may be brought based on the date of the act or omission. Statutes of repose thus bear no relation to the accrual of a cause of

---

In so holding this court stated: "While, as we pointed out in *McCluskey*, there may be merit to the discovery rule, the state of the facts presented herein is not conducive to modification of the present holdings of this court." *Id.* at 633.

The *McCluskey* case referred to in *Olson* is *McCluskey v. Thranow*, 31 Wis. 2d 245, 142 N.W.2d 787 (1966), another situation in which the court ruled that an action for malpractice must be started within three years of the negligent act.

action and can toll before an injury is discovered or even before an injury has occurred.[8]

¶ 27. Statutes of limitation and statutes of repose represent legislative policy decisions that dictate when the courthouse doors close for particular litigants. *See Tomczak*, 218 Wis. 2d at 253–54. Statutes of limitation, which "are found and approved in all systems of enlightened jurisprudence," articulate the principle that it is more just to put the adversary on notice to defend a claim within a specified period of time than to permit unlimited prosecution of stale claims. *United States v. Kubrick*, 444 U.S. 111, 117 (1979). Statutes of limitation promote fair and prompt litigation and protect defendants from stale or fraudulent claims "brought after memories have faded or evidence has been lost." *Korkow v. General Cas. Co. of Wisconsin*, 117 Wis. 2d 187, 198, 344 N.W.2d 108 (1984) (citation omitted). As our courts recognize, "Defendants have a constitutional right to rely upon statutes of limitations to limit the claim against them." *Westphal v. E.I. DuPont de Nemours & Co.*, 192 Wis. 2d 347, 373, 531 N.W.2d 386 (Ct. App. 1995) (citing *Haas v. Sawicki*, 20 Wis. 2d 308, 311–12, 121 N.W.2d 876 (1963)). Statutes of repose operate similarly to protect both plaintiffs and defendants from litigating claims in which the truth may be obfuscated by death or disappearance of key witnesses, loss of evidence, and faded

---

[8] *See* Scott A. DeVries, Note, *Medical Malpractice Acts' Statutes of Limitation as They Apply to Minors: Are They Proper?*, 28 Ind. L. Rev. 413, 414–15 (1995); Christopher J. Trombetta, Note, *The Unconstitutionality of Medical Malpractice Statutes of Repose: Judicial Conscience Versus Legislative Will*, 34 Vill. L. Rev. 397, 400–01 (1989); Susan C. Randall, Comment, *Due Process Challenges to Statutes of Repose*, 40 Sw. L.J. 997, 1002–03 (1986).

memories. *Kubrick*, 444 U.S. at 117; *Tomczak*, 218 Wis. 2d at 272.

¶ 28. In the medical malpractice arena, the interplay among the statutes of limitations and statutes of repose established by Wis. Stat. §§ 893.55(1) and 893.56, and the special discovery provisions of § 893.55(2) and (3), can be perplexing, resulting in different tolling times depending upon the date of injury, the nature of the injury, and the age of the child. Examined alone, § 893.55(1) presents two alternative points for determining when a medical malpractice action must be initiated. The prospective plaintiff must choose the later of these two alternative points as the marker for when to file suit. Section 893.55(1)(a) provides that a medical malpractice claim must be filed within three years of the date of injury. Section 893.55(1)(b) extends the deadline for filing to within one year following the discovery of injury. This subsection, however, requires plaintiffs who seek to file within one year of discovery to initiate their claims no later than five years after the date of the act or omission. Under this statute, someone injured at birth would be required to commence the action either: (1) by the age of three, or (2) within one year after the date of discovery of the injury, but before the age of five.

¶ 29. Wisconsin Stat. § 893.56 overlaps with Wis. Stat. § 893.55(1) to give minors additional time in which to initiate medical malpractice actions. Like Wis. Stat. § 893.55(1), § 893.56 provides the claimant with the benefit of the latest tolling date available under the statutory scheme. Section 893.56 allows minors to commence medical malpractice claims within the period before the child reaches the age of 10 years. When read together with § 893.55(1), § 893.56 creates a situation in which a child injured at birth

must file at the latest of the following dates: (1) by the age of three; (2) within one year after the date of discovery of the injury, but before the age of five; or (3) before the child reaches the age of 10 years. Thus, a minor pursuing a medical malpractice cause of action always has until the age of 10 to file suit, no matter when the act or omission occurred. After the child reaches age 10, the action must be initiated either within three years of the date of injury or within one year of discovery, provided that not more than five years have passed since the act or omission.

¶ 30. The medical malpractice statutes do not automatically extinguish a minor's claim when the minor reaches the age of 10. Whether a cause of action survives that age depends upon the date of the act, omission, or injury. A child injured at age 9, for instance, must file within the later of three years (age 12), one year from the date of discovery but not more than five years after the date of the act or omission (age 14), or before the child's tenth birthday.

¶ 31. All these limitations are overridden when the two special situations outlined in Wis. Stat. § 893.55(2) and (3) come into play. These subsections constitute nearly open-ended discovery rules for situations in which a health care provider conceals a prior act or omission that has resulted in injury to the patient and when a non-therapeutic foreign object has been left in a patient's body.[9]

¶ 32. Because, by their nature, statutes of repose can sometimes arbitrarily extinguish a prospective

---

[9] Our brief discussion of these statutory implications illustrates how complicated the interrelation between Wis. Stat. §§ 893.55 and 893.56 is. Practitioners should take cautious note . of the potential impact of these tolling deadlines for their clients.

plaintiff's cause of action, they often are the subject of constitutional debate.[10] Although this court has never addressed the constitutionality of Wis. Stat. § 893.56, we last examined the constitutionality of Wis. Stat. § 893.55(1)(b) in *Makos*.

¶ 33. In *Makos*, a patient filed a medical malpractice action, alleging that a physician had misdiagnosed her metastatic malignant melanoma. The physician examined a growth on the patient's leg and declared that it was not malignant. *Makos*, 211 Wis. 2d at 45. Nine years later, doctors reexamined the growth and found that it was malignant. *Id.* The patient filed a claim approximately 11 months and one week after she received the melanoma diagnosis.

¶ 34. The combination of these facts meant that when the patient initiated her action, the Wis. Stat. § 893.55(1)(b) one-year-after-discovery statute of limitations did not preclude the action, but the five-year statute of repose acted as a bar because she sought recovery "more than 5 years from the date of the act or omission," namely nine years after the initial misdiagnosis.

¶ 35. The decision in *Makos* resulted in four opinions. Justice Donald W. Steinmetz, author of the lead opinion, held that Wis. Stat. § 893.55(1)(b), as applied to the particular facts at hand, violated the plaintiff's constitutional right to procedural due process and violated the right-to-remedy clause of art. I, § 9 of the Wisconsin Constitution. 211 Wis. 2d at 44.

¶ 36. Justice William A. Bablitch, joined by Justice Jon P. Wilcox, concurred only in the judgment and did not join in the lead opinion's rationale. Justice Bab-

---

[10] *See generally*, Josephine Herring Hicks, Note, *The Constitutionality of Statutes of Repose: Federalism Reigns*, 38 Vand. L. Rev. 627 (1985).

litch found that it was not necessary to reach the constitutional issues because the case could be decided by means of statutory interpretation: Wis. Stat. § 893.55(1)(b) did not cover the plaintiff's claim because the statute addresses only "treatment," not "diagnosis." *Id.* at 55–57.

¶ 37. Justice N. Patrick Crooks concurred separately and agreed with the lead opinion insofar as Wis. Stat. § 893.55(1)(b) offended the right-to-remedy clause under art. I, § 9 of the Wisconsin Constitution. Justice Crooks did not address the procedural due process issue. *Id.* at 59–60.

¶ 38. Justice Ann Walsh Bradley, joined by Chief Justice Shirley S. Abrahamson, dissented. Justice Bradley concluded that Wis. Stat. § 893.55(1)(b) properly barred the plaintiff's action and found that the statute was not unconstitutional on any grounds raised by the defendants. *Id.* at 68.

¶ 39. Justice Janine P. Geske did not participate in *Makos*.

¶ 40. We recognize that this court has not spoken with clarity about the constitutionality of statutes of repose and the right-to-remedy provision of the Wisconsin Constitution. We also acknowledge that there has been considerable discussion about the precedential effect of *Makos*. Upon careful consideration, we have examined *Makos* sufficiently to determine that it carries no precedential weight, and we have decided to overrule it. Our decision today adopts much of Justice Bradley's dissent in *Makos*.

## RIGHT TO REMEDY

¶ 41. Aicher contends that Wis. Stat. §§ 893.55(1)(b) and 893.56 are constitutionally infirm because they precluded her right to seek remedy for a

wrong. Article I, § 9 of the Wisconsin Constitution provides:

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obligated to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

¶ 42. Article I, § 9 is something of a constitutional enigma. Our decisions trace its origin to Paragraph 40 of the Magna Carta, which states: "To none will we sell, to none will we deny, or delay, right or justice." Vol. I Wisconsin Statutes 1898, Sanborn and Berryman's Annotations at 9. The purpose of the clause was explained by Justice Marshall in *Christianson v. Pioneer Furniture Co.*, 101 Wis. 343, 347–48, 77 N.W. 174, 77 N.W. 917 (1898).[11] "[E]very subject. . .may take

---

[11] As Justice Marshall explained:

That provision is very old. Its history dates back to the days of Magna Carta. It was designed to prevent a species of official exactions made as the price of delaying or expediting justice. From the lowest officer to the king himself, in the olden times, bribes were freely demanded and taken to procure the benefits of the laws. They bore no relation whatever to our system of exactions for expenses of litigation, called costs, or the charge as a tax on suits, imposed under laws which bear equally upon all; but they were arbitrary exactions sanctioned by the manners of the times, that went to the personal benefit of the judicial head or body controlling the execution of the law, or to servants or officers connected therewith. It was such abuse, among others, that the barons of England forced King John to abolish by granting the Magna Carta. It contained the following as one of the guaranteed limitations upon kingly prerogatives: "We will not sell the right and justice to anyone, nor will we refuse it, or put it off." Says Sir Edward Coke, "The king, in the judgment of the law, is ever present and repeating in all his courts, *'Nulli vendemus, nulli negabimus, aut differemus*

121

his remedy by the course of the law and have justice and right for the injury done to him, freely, without sale, fully without any denial, and speedily without delay." *Id.* at 348. Marshall asserted that state constitutional provisions incorporating this principle "do not grant the right" of remedy but rather preserve remedies that existed at common law.[12] *Id.*

¶ 43. It is possible to mine the pronouncements of Wisconsin courts for evidence that art. I, § 9 creates rights, or that it authorizes courts to fashion rights. In its recent interpretation of the provision, however, this court has stated that art. I, § 9 confers no legal rights. *Roberta Jo W. v. Leroy W.*, 218 Wis. 2d 225, 238, 578 N.W.2d 185 (1998); *Tomczak*, 218 Wis. 2d at 262; *Makos*, 211 Wis. 2d at 79 (Bradley, J., dissenting); *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 189–90, 290 N.W.2d 276 (1980). Rather, art. I, § 9 applies only when a prospective litigant seeks a remedy for an already existing right. In *Makos*, Justice Bradley described this right as a "legislatively recognized right:" "The *Mulder* court emphasized that its prior

rectum vel justitiam,' and therefore every subject, for injury done him 'in bonis, in terris, vel persona,' by any other subject, be he ecclesiastical or temporal, without any exceptions, may take his remedy by the course of the law and have justice and right for the injury done to him, freely without sale, fully without any denial, and speedily without delay." So the right thus obtained as a concession from sovereign power has come down to us through the centuries that have passed, and been preserved in all its integrity in substantially all state constitutions. They do not grant the right, but guarantee the preservation of one that existed under the constitution of England.

*Christianson v. Pioneer Furniture Co.*, 101 Wis. 343, 347–48, 77 N.W. 174, 77 N.W. 917 (1898).

[12] Article XIV, § 13 explicitly recognizes legislative authority to alter or suspend common law.

Wis. Const. art. I, § 9 analysis in *Kallas* stood for no more than the proposition that the 'remedy for wrongs' section might have 'possible application. . .where a remedy is sought for a 'legislatively *recognized right*.' " *Makos*, 211 Wis. 2d at 79 (Bradley, J., dissenting) (quoting *Mulder*, 95 Wis. 2d at 189–90 n.3). The right-to-remedy clause thus preserves the right "to obtain justice on the basis of the law as it in fact exists." *Mulder*, 95 Wis. 2d at 189.

¶ 44. What is the "law as it in fact exists?" One of the common-law rights recognized by the legislature is the right to bring a medical malpractice claim. *Martin v. Richards*, 192 Wis. 2d 156, 206–09, 531 N.W.2d 70 (1995). Between 1975 and 1979, the legislature modified the terms under which persons can initiate medical malpractice actions. Among these changes were statutes of limitations that were more restrictive than those laid out for other tort actions, as well as the statutes of repose at issue here. These legislative determinations circumscribed the remedy for medical malpractice. These legislative actions defined how the law in fact exists.

¶ 45. From time to time, this court has suggested that art. I, § 9 is inconsistent with legislation barring a suit before an injury actually occurs. *Makos*, 211 Wis. 2d at 52–54 (lead opinion); *Kallas Millwork Corp. v. Square D Co.*, 66 Wis. 2d 382, 393, 225 N.W.2d 454 (1975); *Rosenthal v. Kurtz*, 62 Wis. 2d 1, 8, 213 N.W.2d 741 (1974). On occasion, this court has argued that such legislation is unconstitutional. But we find no decision from this court, not even *Rosenthal*, squarely invalidating a statute on this ground. Courts may shudder at the unfairness visited by statutes of repose, but we generally acknowledge the policies underlying these limiting statutes. For instance, in *Rosenthal*, a

case in which this court struck down a statute of repose because of suspect classification, the court raised serious questions about art. I, § 9, but we admitted: "Some statute of repose is obviously desirable as a matter of public policy." 62 Wis. 2d at 11.

¶ 46. The question of what the statute of limitations or the statute of repose for a particular action should be is a fundamental question of public policy. The legislature has recognized the importance of prompt litigation of claims and a need to protect defendants from fraudulent or stale claims. Statutes of limitations and statutes of repose bring finality to disputes, at least in the respect that they close judicial tribunals to the prosecution of claims. *Pritchard vs. Howell*, 1 Wis. 131, [118], [123] (1853). A statute of limitations "takes the action away altogether. . . .[I]t annihilates the remedy." *Id.*

¶ 47. Although art. I, § 9 "guarantees a suitor a day in [ ] court," a statute of limitations may preclude a plaintiff's action, and a defendant may rely on the statutory bar, even if the plaintiff did not discover the injury. *Rod v. Farrell*, 96 Wis. 2d 349, 355–56, 291 N.W.2d 568 (1980) (per curiam), *rev'd on other grounds, Hansen*, 113 Wis. 2d 550; *CLL Assoc. v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 614–15, 497 N.W.2d 115 (1993); *Halverson v. Tydrich*, 156 Wis. 2d 202, 214–16, 456 N.W.2d 852 (Ct. App. 1990).

¶ 48. This court has worked to soften the effect of these consistent rulings by recognizing a common-law discovery rule for actions sounding in tort that are not covered by other statutory discovery rules. *Claypool*, 209 Wis. 2d at 294. In *Hansen*, we held that a statute of limitations begins to run for tort claims when the plaintiff discovers the injury. 113 Wis. 2d at 560. In *Hansen*, however, the court did not disturb the constitutional

holdings of *Rod v. Farrell* as to art. I, § 9. *CLL Assoc.*, 174 Wis. 2d at 614 n.4; *Hartland-Richmond Ins. v. Wudtke*, 145 Wis. 2d 682, 694, 429 N.W.2d 496 (Ct. App. 1988), *rev'd on other grounds, Funk v. Wollin Silo & Equip., Inc.*, 148 Wis. 2d 59, 435 N.W.2d 244 (1989).

¶ 49. Last term, this court ruled that a woman's right to pursue a medical malpractice claim from 1979 was barred because she failed to file a notice of claim with a government entity within 120 days of the injury-causing event, even though she did not discover the injury until 1995, more than 15 years later. *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 588 N.W.2d 19 (1999). Although our *Snopek* decision did not examine constitutional issues, we applied a former legislative determination that a notice of claim must be filed with a governmental unit as a prerequisite to litigation.

¶ 50. We see no distinction between closing the doors to the courtroom for claimants when an injury has not been discovered within a fixed period of time after some act or omission and closing the doors to the courtroom for a person whose injury has not yet occurred within a fixed period of time after some act or omission. The effect of extinguishing a remedy in court is the same. This court has concluded many times that the legislature may sever a person's claim by a statute of limitations or a statute of repose when the person has had no possibility of discovering the injury—when the person has been blameless in every respect. These decisions represent judicial deference to the stated policy of the legislature. Protecting the interests of those who must defend claims based on old acts or omissions is a policy concern that legislative bodies have weighed for centuries. Even persons who intentionally commit criminal batteries and other crimes benefit from these

policy considerations. *John v. State*, 96 Wis. 2d 183, 194, 291 N.W.2d 502 (1980).[13]

¶ 51. The legislature formulates the statutory law of Wisconsin, pursuant to constitutional authority. The legislature's authority includes the power to define and limit causes of action and to abrogate common law on policy grounds.

¶ 52. This court itself has determined that sound public policy may justify limitations on liability. *Rolph v. EBI Cos.*, 159 Wis. 2d 518, 464 N.W.2d 667 (1991); *Coffey v. Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132 (1976); *Dumer v. St. Michael's Hosp.*, 69 Wis. 2d 766, 774, 233 N.W.2d 372 (1975); *Rieck v. Medical Protective Co.*, 64 Wis. 2d 514, 517, 219 N.W.2d 242 (1974); *Hass v. Chicago & N.W. Ry. Co.*, 48 Wis. 2d 321, 179 N.W.2d 885 (1970). In other words, we ourselves have placed limitations on people's rights to recover for personal injury in order to advance the overall interest of justice. Article I, § 9 does not empower this court to substitute its views for legislative policy any more than art. I, § 9 prevents this court from using sound policy to influence tort law.

¶ 53. Statutes limiting the time period for filing actions historically have been policy decisions within the province of the legislature. *See Tomczak*, 218 Wis.

---

[13] In *John v. State*, we observed:

> The criminal statutes of limitations serve a number of functions but the primary purpose is to protect the accused from having to defend himself against charges of remote misconduct. A corollary purpose is to ensure that criminal prosecutions will be based on evidence that is of recent origin. It also assures that law enforcement officials will act promptly to investigate and prosecute criminal activity. This helps to preserve the integrity of the decision-making process in the trial of criminal cases.

*John v. State*, 96 Wis. 2d 183, 194, 291 N.W.2d 502 (1980).

2d at 254. Wisconsin Stat. § 893.55(1)(b) recognizes a right for medical malpractice claims only when the plaintiffs seek recovery either within three years of the injury or within one year of discovery, provided that five years have not passed since the act or omission. Section 893.56 extends the limitation period for minors to the age of 10 years. These provisions reflect the legislature's view that prompt litigation ensures fairness to the parties. A case such as this one, in which the physician allegedly responsible for the malpractice is deceased and no longer able to defend himself, illustrates precisely the type of stale claim that statutes of limitations and statutes of repose are designed to ameliorate.

¶ 54. We remain persuaded that the time limitation periods articulated by statutes of repose inherently are policy considerations better left to the legislative branch of government. *Tomczak*, 218 Wis. 2d at 254. No right to remedy resides here because the legislature expressly chose not to recognize a right based on a claim discovered more than five years after the allegedly negligent act or omission or after the child reaches the age of 10. We cannot preserve a right to obtain justice where none in fact exists. *See Mulder*, 95 Wis. 2d at 189–90. Were we to extend a right to remedy outside the limits of these recognized rights, we effectively would eviscerate the ability of the legislature to enact any statute of repose.

## EQUAL PROTECTION

¶ 55. Having found that Wis. Stat. §§ 893.55(1)(b) and 893.56 do not violate the right-to-remedy clause of the Wisconsin Constitution, we next consider whether the statutes offend the equal protec-

tion provisions of the Wisconsin or United States Constitutions.[14] The issue we must analyze here is whether treating minor medical malpractice claimants differently from other tort claimants violates equal protection.

¶ 56. Parties seeking to challenge the constitutionally of a statute on equal protection grounds must demonstrate that the statute treats members of a similarly situated class differently. *Tomczak*, 218 Wis. 2d at 261 (citing *State v. Post*, 197 Wis. 2d 279, 318, 541 N.W.2d 115 (1995)). Usually, this court will uphold a statute under equal protection principles if we find that a rational basis supports the legislative classification. *State v. Annala*, 168 Wis. 2d 453, 468, 484 N.W.2d 138 (1992). We engage in strict scrutiny analysis only when a statute impinges on a "fundamental right" or creates a classification that "operates to the peculiar disadvantage of a suspect class." *Tomczak*, 218 Wis. 2d at 261–62 (quoting *Annala*, 168 Wis. 2d at 468). Because the rights guaranteed by art. I, § 9 are not "fundamental," we employ the rational basis test to

---

[14] Article I, § 1 of the Wisconsin Constitution provides: "Equality; inherent rights. Section 1. All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

Amendment XIV, § 1 of the United States Constitution provides: "No State shall. . .deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We apply the same interpretation to the equal protection provisions of both the Wisconsin Constitution and the federal constitution. *Tomczak v. Bailey*, 218 Wis. 2d 245, 261, 578 N.W.2d 166 (1998).

examine the constitutionality of Wis. Stat. §§ 893.55(1)(b) and 893.56.[15] *Id.* at 262.

¶ 57. Under the rational basis test, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when it enacted the provision. *Omernik v. State*, 64 Wis. 2d 6, 18–19, 218 N.W.2d 734 (1974). The task of drawing lines between different classifications is a legislative one in which perfection "is neither possible nor necessary." *Makos*, 211 Wis. 2d at 75 (Bradley, J., dissenting) (quoting *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314 (1976)). It is not our role to determine the wisdom or rationale underpinning a particular legislative pronouncement. *Tomczak*, 218 Wis. 2d at 265 (quoting *Sambs v. City of Brookfield*, 97 Wis. 2d 356, 371, 293 N.W.2d 504 (1980)). This court therefore must sustain a statute unless we find that "it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." *Tomczak*, 218 Wis. 2d at 264 (quoting *State v. McManus*, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989)). Recognizing that classifications often are imperfect and can produce inequities, our goal is to determine whether a classification scheme rationally advances a legislative objective. *Makos*, 211 Wis. 2d at 75 (Bradley, J., dissenting). In so doing, we are obligated to locate or, in the alternative, construct a rationale that might have influenced the legislative determination. *Tomczak*, 218 Wis. 2d at 264.

¶ 58. A legislative classification satisfies the rational basis test if it meets five criteria:

---

[15] The parties agree that an equal protection challenge to Wis. Stat. §§ 893.55(1)(b) and 893.56 should be reviewed under the rational basis test.

(1) All classification[s] must be based upon substantial distinctions which make one class really different from another.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within a class.]

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Id.* at 272–73 (quoting *Dane County v. McManus*, 55 Wis. 2d 413, 423, 198 N.W.2d 667 (1972)). Aicher contends that the classification system established by Wis. Stat. §§ 893.55(1)(b) and 893.56 fails under four of these five factors.

¶ 59. The statutory scheme governing general malpractice actions has survived previous challenges under the five-pronged criteria. *See Miller*, 191 Wis. 2d at 582; *Strykowski*, 81 Wis. 2d at 508–09.[16] Our courts, however, have not explored in detail whether the appli-

---

[16] *See also American Bank & Trust Co. v. Community Hosp.*, 683 P.2d 670, 677 n.10 (Cal. 1984) (observing that 23 states and three federal circuits have found that medical malpractice statutes of repose and limitations are related rationally to the legitimate legislative objective of controlling medical malpractice insurance costs, and finding that classifications created by the statutes withstand equal protection challenges).

cation of medical malpractice legislation to minors satisfies the rational basis test.[17]

¶ 60. To overcome the first prong, Aicher must show that Wis. Stat. §§ 893.55(1)(b) and 893.56 are not based on substantial distinctions that make one class different from another. She is unable to do so for three reasons. First, the distinct nature of the medical malpractice arena itself sets it apart from other forms of litigation. *See Makos*, 211 Wis. 2d at 75–76 (Bradley, J., dissenting). The Judicial Council Committee's Notes to § 893.55 provide that, "This section has been created to precisely set out the time periods within which an action to recover damages for medical malpractice must be commenced." Judicial Council Committee Note, 1979, § 893.55, Stats. Second, both statutes of repose are substantially distinct from the limitation periods established for other tort claims. For instance, the discovery rule adopted in *Hanson* applies to certain tort suits but not to medical malpractice actions. Third, § 893.56 creates a substantial distinction between minor malpractice claimants and adult claimants, giving minors up to the age of 10 to initiate a suit, as opposed to a maximum of only five years from the date of the act or omission for adults.

¶ 61. Affording different treatment to children who generally are less able during their early years to

---

[17] The court of appeals addressed an equal protection challenge by a minor in *Halverson v. Tydrich*, 156 Wis. 2d 202, 456 N.W.2d 852 (Ct. App. 1990). In *Halverson*, the plaintiff argued that he was deprived of his claim because his mother failed to bring the action. *Id.* at 215. The court of appeals concluded that the plaintiff's minority was irrelevant under the facts of that facts because both the plaintiff and his mother discovered the injury after the five-year statute of repose under Wis. Stat. § 893.55(1)(b) elapsed. *Id.* at 215–16.

articulate concerns and protect their interests is not novel. Moreover, the legislature found a statistical basis for distinguishing children from adults in medical malpractice actions. As Justice Bradley noted in her *Makos* dissent, findings in 1976 indicated that 98.9 percent of adult medical malpractice claimants and 95 percent of minor medical malpractice claimants filed actions within five years of the alleged act or omission. *Makos*, 211 Wis. 2d at 73 (Bradley, J., dissenting) (citing Staff Paper #10, *Analysis of Statistical Data and Recent Wisconsin Cases on Statutes of Limitations*, Malpractice Committee, Legislative Council Staff, Sept. 21, 1976). Allowing minors additional time in which to file claims comports with these statistics.

¶ 62. Under the second prong, Aicher has the burden of showing that the statutes are not germane to the purpose of the law. This is a difficult burden to surmount. Our courts have recognized that the legislature was cognizant of the policy issues surrounding medical malpractice actions. *See e.g., Miller*, 191 Wis. 2d at 580. The legislature designed Wis. Stat. § 893.55(1)(b) to address a perceived crisis in the health care field by providing a degree of immunity from the otherwise "long tail" of tort liability. *Makos*, 211 Wis. 2d at 76 (Bradley, J., dissenting).

¶ 63. We are able to locate a rationale and purpose underlying the enactment of both Wis. Stat. §§ 893.55(1)(b) and 893.56 in the legislative history of the provisions. Materials generated in support of the medical malpractice legislation reveal that the drafters of the statute balanced both the continuing liability of health care providers and the rising costs of malpractice premiums. Staff Paper #10, *Analysis of Statistical Data and Recent Wisconsin Cases on Statutes of Limitation*, Malpractice Committee, Legislative Council

Staff, Sept. 21, 1976. Whether the perception of a malpractice crisis was inflated or illusory makes little difference because the perceived crisis led the legislature to make a policy determination about the costs of health care. Moreover, the enactment of Wis. Stat. § 893.55(1)(b), which created a discovery rule for medical malpractice, was in response to this court's pointed recommendation that a three-year rule based on injury alone was too short to cover many claims. *Claypool*, 209 Wis. 2d at 292–93. Wisconsin Stat. § 893.55(2) and (3) also created new discovery rules for specific claims.

¶ 64. The chapter that created Wis. Stat. § 893.56, the ten-year statute of repose for minors, included a legislative finding that the "number of suits and claims for damages arising from professional patient care has increased tremendously in the past several years and the size of judgments and settlements. . .has increased even more substantially, especially in the case of minors." Ch. 390, Laws of 1977, § 1(a). The legislature expressed concern that increasing judgments and settlements in lawsuits brought by and on behalf of minors contributed to rising insurance and health care costs. *Id.* at § 1(b)–(c). The legislature further stated that "the interests of minor children can be adequately and fully protected by adopting the same time limit for bringing actions as applies to adults, except in the case of very young children," and concluded that the interests of very young minor children were protected adequately by extending the statute of repose up to the age of ten years. *Id.* at § 1(d)–(e).

¶ 65. Aicher contends that Wis. Stat. § 893.56 is irrational because the legislature articulated no sound reason for selecting the age of 10 as the limitation period for the statute of repose for minors. She cor-

rectly notes that Assembly Bill 705 first utilized the age of eight and subsequently considered the ages of 13, 10, and 15 before ultimately selecting 10. Aicher argues that these variations reflect the arbitrariness of the legislature's choice. Although the legislative history is silent about why these choices were made, we must indulge every presumption favoring the validity of the statute. *Tomczak*, 218 Wis. 2d at 261. We can presume that the several redrafts of the bill that culminated with the designation of the age of 10 were the product of careful legislative debate and consideration. We similarly can presume that at some point, the legislature determined that the age of 10 best suits the meaning of "very young children" who require extra protection.[18]

¶ 66. Legislation must be sustained when we can conceive of any facts upon which the legislation reasonably could be based. *Strykowski*, 81 Wis. 2d at 506. Admittedly, different persons might set the age for "very young child" at different stages. But the classification scheme rationally advances the legislative purpose of providing extra protection for young children. We therefore "disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred." *Makos*, 211 Wis. 2d at 75 (Brad-

---

[18] In those states in which the legislature has shortened the time limitation periods for minors, there generally is a minimal tolling age allowed for very young children. The ages vary from age six to age 19. The American Medical Association, "the foremost advocate of reform in this area," recommends that a minimum tolling period should run until age six or eight. *See* Rob M. Alston, Comment, *Utah's Statute of Limitation Barring Minors from Bringing Medical Malpractice Actions: Riding Roughshod Over the Rights of Minors?*, 1992 Utah L. Rev. 929, 939–40, 970–71.

ley, J., dissenting) (quoting *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981)).

¶ 67. The allocation here is reasonable. The legislature could have concluded that by the age of 10, most children will have been in school for at least four years. Children, at age 10, will have been observed by teachers, counselors, parents, and other adults outside their own families. They will have been in contact with the types of children prone to notice distinguishing characteristics. Children at this age likely will have had other contacts with the health care system. By the age of 10 years, they probably will have developed an ability to communicate their concerns, an ability that will have advanced markedly from their early childhood.

¶ 68. Aicher has failed to show that the statutes of repose are not germane to the purpose of the law. The legislature took account of the important policy considerations of health care and insurance costs and made a determination to ensure the timely litigation of malpractice claims. The legislature also reckoned with the extra protection very young children might require. While recognizing the harsh results that statutes of repose sometimes create for potential litigants, we must uphold the legislative determination that public policy is best fulfilled by setting a finite termination for minor medical malpractice claims within either five years of the act or omission or the date the minor reaches the age of 10, whichever is later. *See Makos*, 211 Wis. 2d at 73–74 (Bradley, J., dissenting).

¶ 69. Aicher does not dispute that the statutes meet the third prong of the rational basis criteria, namely that the classification is not based upon existing circumstances only and is constituted in a way that does not preclude addition to the numbers included within a class. Wisconsin Stat. §§ 893.55(1)(b)

and 893.56 both allow expansion of the class to include additional minors.

¶ 70. Under the fourth prong, however, Aicher argues that the classification scheme is irrational because it does not treat minors equally. In particular, she contends that the legislation harms developmentally disabled minors who require the most protection. Aicher explains that whereas non-developmentally disabled minors have one year from the date of discovery to file malpractice actions, limited by a maximum of five years from injury or until the tenth birthday, developmentally disabled minors must file within the narrower time limits established for adults.

¶ 71. Wisconsin Stat. § 893.56 has remained unchanged from July 1, 1980, until the present. It provides in part that, "Any person under the age of 18, *who is not under disability by reason of insanity, developmental disability or imprisonment*, shall bring an action. . .within the time limitation under s. 893.55 or by the time that person reaches the age of 10 years, whichever is later" (emphasis added).

¶ 72. Until late 1998, Wis. Stat. § 893.16 provided in part:

**Person under disability.** (1) If a person entitled to bring an action is, at the time the cause of action accrues, either under the age of 18 years, except for actions against health care providers; or insane, or imprisoned on a criminal charge the action may be commenced within 2 years after the disability ceases, except that where the disability is due to insanity or imprisonment, the period of limitation prescribed in this chapter may not be extended for more than 5 years.

¶ 73. Aicher correctly reads Wis. Stat. § 893.56 to exclude the developmentally disabled, and she also correctly notes that Wis. Stat. § 893.16 does not provide the developmentally disabled with an extension for filing medical malpractice actions. We suspect that this discrepancy is the result of oversight rather than purposeful discrimination. It is likely that the legislature's intent was to extend the period of filing for persons with developmental disabilities, not reduce it.[19] In any event, Aicher is not developmentally disabled, and she is not poised to attack the statutes from the perspective of a class of which she is not a part. Our courts disfavor statutory challenges that are not based on the plaintiff's actual status because "constitutional rights are personal and may not be asserted vicariously." *State v. Janssen,* 219 Wis. 2d 362, 371, 580 N.W.2d 260 (1998) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973)).

¶ 74. Aicher also maintains that the statutes of repose irrationally create disparate treatment between minors of different ages because a child injured at the age of two has more time in which to file than a child injured when eight. We "cannot conclude that such a time-based classification is irrational, since by their nature, every statute of limitations and statute of repose must make such a distinction." *Makos,* 211 Wis. 2d at 78 (Bradley, J., dissenting). Were we to accept Aicher's challenge on these grounds, we would have to conclude that every statute of limitation and every

---

[19] In creating then Wis. Stat. § 893.235, which is now Wis. Stat. § 893.56, 1977 Assembly Bill 705 tracked precisely then Wis. Stat. § 893.33, entitled "Persons under disability," until the Senate approved a handwritten floor amendment adding the phrase "developmental disability." Senate Amendment 2, 1977 A.B. 705.

statute of repose is unconstitutional. Such a result would contradict our traditional view that statutes establishing time limitation periods are policy considerations within the province of the legislature. *Tomczak*, 218 Wis. 2d at 254 (citing *Miller*, 191 Wis. 2d at 580).

¶ 75. Finally, under the fifth prong of the rational basis test, we find that a need for substantially different legislation arises because the class of minors is reasonably distinct from other medical malpractice claimants. The need for finality is particularly acute in minor medical malpractice actions. In the case of minors, recollection of an act or omission can fade more rapidly, the onset of maturity can affect the nature of a condition, and medical advances can modify whether a particular condition is treatable.[20] Moreover, when, as here, a minor alleges that the act or omission occurred at a very young age, there is a greater likelihood that the health care provider, an essential witness to the occurrence, will be deceased or retired. If malpractice carriers were required to defend such stale claims, there would be a substantial increase in the cost of health care. These are precisely the types of results the legislature attempted to alleviate.

¶ 76. We conclude our examination of the equal protection question by observing that similar statutes of repose and statutes of limitations have withstood challenges in the state courts of other jurisdictions. These courts hold that under the rational basis test, a classification that treats minors pursuing medical malpractice actions differently from persons with claims for other torts is related rationally to the legitimate

---

[20] *See* Scott A. DeVries, Note, *Medical Malpractice Acts' Statutes of Limitation as They Apply to Minors: Are They Proper?*, 28 Ind. L. Rev. 413, 419 (1995).

legislative objective of reducing health care costs and malpractice insurance premiums.[21] Significantly, the age at which other states set the statute of repose often

[21] *See Estate of McCarthy v. Montana Second Judicial Dist. Court, Silverbow County*, 994 P.2d 1090, 1095 (Mont. 1999) (sustaining statute of repose that requires minors to file cause of action by the age of eight for injuries sustained before the age of four); *Plummer v. Gillieson*, 692 N.E.2d 528 (Mass. App. Ct. 1998) (statute of repose that extinguishes claims of minor malpractice claimants at age six fulfills legislative objective of reducing cost of medical malpractice insurance); *Partin v. St. Francis Hosp.*, 694 N.E.2d 574 (Ill. App. Ct. 1998) (statute of repose prohibiting medical malpractice lawsuit for injury to minor brought more than eight years after the act or omission did not violate minor's equal protection rights under rational basis test); *Bonin v. Vannaman*, 929 P.2d 754 (Kan. 1996) (eight-year statute of repose for claims of persons under legal disability does not violate equal protection as it affects minors and has a rational basis to goals of ameliorating rapidly rising costs of medical malpractice insurance); *Brubaker v. Cavanaugh*, 741 F.2d 318 (10th Cir. 1984) (applying Kansas law and holding that statute requiring both minors and adults to bring a cause of action within four years after the act or omission does not suffer an equal protection infirmity); *Kite v. Campbell*, 191 Cal. Rptr. 363, 366–67 (Cal. App. 1983), *rev'd on other grounds*, 718 P.2d 909 (1986) (statute requiring minors under the age of six to file a medical malpractice action either within three years or prior to the eighth birthday did not violate equal protection principles); *Reese v. Rankin Fite Mem. Hosp.*, 403 So. 2d 158 (Ala. 1981) (statute of repose extinguishing claims of minors at age of eight for alleged negligence committed before the age of four survived equal protection challenge); *Rohrabaugh v. Wagoner*, 413 N.E.2d 891 (Ind. 1980) (statute of limitations requiring minors to file medical malpractice actions within two years from the date of the alleged act or omission, except that minors under the full age of six have until the eighth birthday in which to file, does not violate equal protection).

is less than the age of 10 ultimately chosen by our legislature.

¶ 77. We recognize that other courts, like this one, have not spoken with one voice as to the constitutionality of statutes of repose and statutes of limitations. *See Corkill v. Knowles*, 955 P.2d 438, 445–47 (Wyo. 1998) (Thomas, J., concurring); Scott A. DeVries, Note, *Medical Malpractice Acts' Statutes of Limitation as They Apply to Minors: Are They Proper?*, 28 Ind. L. Rev. 413 (1995); Christopher J. Trombetta, Note, *The Unconstitutionality of Medical Malpractice Statutes of Repose: Judicial Conscience Versus Legislative Will*, 34 Vill. L. Rev. 397 (1989); Josephine Herring Hicks, Note, *The Constitutionality of Statutes of Repose: Federalism Reigns*, 38 Vand. L. Rev. 627 (1985). Nonetheless, we conclude that the cases that strike down statutes of repose for minor claimants are distinguishable. Those decisions explore the different legislative purposes underpinning the statutes, undertake the equal protection analysis under heightened scrutiny, or strike down the statutes on other constitutional grounds.[22]

---

[22] *See Lyons v. Lederle Laboratories*, 440 N.W.2d 769 (S.D. 1989) (finding that legislative objective was not reduction in health care costs but rather desire to reduce the number of malpractice claims initiated by minor plaintiffs; statute limited malpractice claims by minors to general three-year statute of limitations but allowed child until the age of eight to seek recovery for injuries that occur before the age of six); *Torres v. County of Los Angeles*, 257 Cal. Rptr. 211 (Cal. App. 1989) (finding that a statute of limitations that, for minors runs from the date of the alleged act, and for adults runs from the date of discovery, violates minors' equal protection); *Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7, 12 n.9 (Mo. 1986) (striking down statute that gave minors until the age of 10 to commence actions and afterwards, only two years from the alleged malpractice. Court applied open

¶ 78. Taming the costs of medical malpractice and ensuring access to affordable health care are legitimate legislative objectives. We therefore hold that the statutes of repose for minor medical malpractice actions satisfy the rational basis test because they evince a rational relationship between the classification scheme and a legitimate governmental objective. Accordingly, we hold that Wis. Stat. §§ 893.55(1)(b) and 893.56 do not violate the equal protection provisions of the Wisconsin and United States Constitutions.

## DUE PROCESS

¶ 79. Having concluded that Wis. Stat. §§ 893.55(1)(b) and 893.56 withstand an equal protection challenge, we next examine whether the statutes

---

courts analysis and expressly stated that it did not rule on equal protection grounds); *Barrio v. San Manuel Div. Hosp., Magma Copper*, 692 P.2d 280 (Ariz. 1984) (applying strict scrutiny analysis on the basis of a statute that creates a "fundamental right" to recover damages for acts of negligence); *Schwan v. Riverside Methodist Hosp.*, 452 N.E.2d 1337 (Ohio 1983) (finding violation of equal protection under the rational basis test without examining the statute's legislative history or rationale and overturning statute that required minors over the age of ten to file claims within one year of the alleged malpractice); *Sax v. Votteler*, 648 S.W.2d 661 (Tex. 1983) (statute allowing minors until the age of eight for malpractice committed before the age of six violates open courts provision where Texas law dictates that the right to recover for medical costs incurred on behalf of a minor is a cause of action belonging to the parents); *Carson v. Maurer*, 424 A.2d 825 (N.H. 1980) (analyzing statute that subjected minors to the same two-year limitation period as adults, court assessed constitutionality of statute on more stringent, middle-tier "fair and substantial" scrutiny).

offend due process principles. Although the parties do not present direct arguments about this question, we address it because the circuit court ruled in part on the basis of procedural due process.

¶ 80. The Fourteenth Amendment to the United States Constitution and art. I, § 1 of the Wisconsin Constitution prohibit government actions that deprive any person of life, liberty, or property without due process of law. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Casteel v. McCaughtry*, 176 Wis. 2d 571, 579, 500 N.W.2d 277 (1993). When examining whether there has been a violation of procedural due process, this court engages in a two-step analysis. *Id.* First, we examine whether the person has established that a constitutionally protected property or liberty interest is at issue. *Id.*; *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Second, we consider whether the procedures attendant with the deprivation of the interest were sufficient. *Casteel*, 176 Wis. 2d at 579. If we determine that the claimant has not been deprived of a constitutionally protected interest, we do not reach the second step of the analysis. *See id.*

¶ 81. In this case the property interest at issue is Aicher's medical malpractice claim. The constitution does not create property interests; rather, they are established and defined "by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents*, 408 U.S. at 577. A

right to due process is not violated simply because a statute extinguishes a cause of action before a claimant discovers the injury. *CLL Assoc. v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 614, 497 N.W.2d 115 (1993) (citations omitted). Rather, the due process analysis focuses on whether the claimant has a vested property interest in the cause of action.

¶ 82. In Wisconsin, a cause of action is a vested property right only if it has accrued. *Makos*, 211 Wis. 2d at 70 (Bradley, J., dissenting) (citing *Hunter v. School Dist. of Gale-Etrrick-Trempealeau*, 97 Wis. 2d 435, 445–46, 293 N.W.2d 515 (1980)). In tort claims, a cause of action "accrues" when the claimant "discovers" the injury. *Hansen*, 113 Wis. 2d at 560. "If a statute of repose has run, no legally recognized cause of action can accrue and, therefore, no right can vest." Susan C. Randall, Comment, *Due Process Challenges to Statutes of Repose*, 40 Sw. L.J. 997, 1007 (1986).

¶ 83. In this case Aicher's cause of action accrued when she discovered her injury, after she had reached her tenth birthday. At that point, the statutes of repose, Wis. Stat. §§ 893.55(1)(b) and 893.56, had run and combined to extinguish her cause of action. The statutes ceased to recognize the property interest "before it ever became a property right." *Makos*, 211 Wis. 2d at 70–71 (Bradley, J., dissenting).

¶ 84. We therefore determine that Aicher has not been deprived of a constitutionally protected interest. Having so found, we do not address the question whether the procedures attendant with the deprivation of a property interest were sufficient.

CONCLUSION

¶ 85. We find Wis. Stat. §§ 893.55(1)(b) and 893.56 constitutional, despite the harsh results they yield in this case. We hold that §§ 893.55(1)(b) and 893.56 do not violate the right-to-remedy clause because a prospective claimant does not have a legislative right to pursue a medical malpractice action if the injury is discovered after the statutory time limitation period elapses. We conclude that §§ 893.55(1)(b) and 893.56 do not offend equal protection principles because the classifications created by the statutes are rationally based on legitimate legislative objectives. We also find that the statutes did not violate Aicher's right to procedural due process because an unaccrued cause of action does not constitute a constitutionally protected property interest. Because we sustain the constitutionality of Wis. Stat. §§ 893.55(1)(b) and 893.56, we do not address whether the one-year-after discovery statute of limitations can be severed from the five-year statute of repose. We therefore find that §§ 893.55(1)(b) and 893.56 bar Aicher's cause of action, and we reverse the decision of the circuit court.

*By the Court.*—The order of the circuit court is reversed.

¶ 86. N. PATRICK CROOKS, J. (dissenting). The doors of the courthouse have again been closed—this time to children. The result of the majority's decision is to deny children such as Ame Aicher the opportunity to have their day in court. This result is untenable. I conclude that the statutes at issue are unconstitutional as applied to the facts of this case. Accordingly, I would affirm the circuit court's decision.

144

¶ 87. Wisconsin Stat. § 893.55(1)(b) is, in part, a statute of repose that extends the deadline for filing a medical malpractice action to one year from the date of the injury's discovery, but no later than five years after the date of the act or omission. Wisconsin Stat. § 893.56 is a statute of repose extending the time for minors to initiate a medical malpractice claim until they are 10 years old. The majority holds that these two statutes are constitutional because they do not violate the right-to-remedy provision of Wis. Const. art. I, § 9. Majority op. at ¶ 6. The majority also concludes that the statutes do not violate equal protection or procedural due process. *Id.* I disagree with the majority's conclusion that the statutes are constitutional under art. I, § 9.

¶ 88. In *Estate of Makos v. Wisconsin Masons Health Care Fund*, 211 Wis. 2d 41, 67, 564 N.W.2d 662 (1997) (Crooks, J., concurring), a case presenting an almost identical situation, I suggested three principles that I believe a court should consider when deciding if a person has been denied the right to a remedy, contrary to Wis. Const. art. I, § 9:

(1) whether the legislature modified, reduced, or eliminated a post-constitutional cause of action created by the legislature itself; (2) whether the legislature modified, reduced, or eliminated a common law or pre-constitutional statutory cause of action and provided a reasonable alternative; and (3) whether, if the legislature did not provide a reasonable alternative, it has established that an overpowering public necessity for the abolishment of such right exists, and that no reasonable alternative exists.

I concluded in *Makos* that under these principles, and taking into consideration "the unique nature of medical malpractice actions," § 893.55(1)(b) violated art. I, § 9.

*Id.* Cheryl Makos, the plaintiff in that case, filed her medical malpractice action within § 893.55(1)(b)'s one-year discovery rule, but after the expiration of the five-year statute of repose in § 893.55(1)(b). *Id.* at 45. I joined in the lead opinion's conclusion that the statute, as applied in the *Makos* case, violated the right-to-remedy provision in art. I, § 9. *Makos* did not discover her injury, nor could she have done so, until after the statute of repose had run. *Id.* at 59. The right to bring a medical malpractice claim was present at common law. The legislature, therefore, could not freely eliminate the right to bring such a claim. *Id.* at 64. Further, the legislature did not provide a reasonable alternative, but completely barred her from a remedy. *Id.* at 65. Finally, because the legislature had already addressed the "medical malpractice crisis" of the 1970s with the enactment of Wis. Stat. ch. 655, there was no need to eliminate Makos' right to remedy through § 893.55(1)(b). *Id.* I "concluded that there are circumstances under which the legislature cannot eliminate a plaintiff's right to bring a cause of action pursuant to a statute of repose without violating Wis. Const. art. I, § 9." *Tomczak v. Bailey*, 218 Wis. 2d 245, 282, 578 N.W.2d 166 (1998) (Crooks, J., concurring) (citing *Makos*).

¶ 89. Other jurisdictions have examined this issue and concluded that the harm to children outweighs any legislative interest in reining in economic and social costs associated with medical malpractice. The Missouri Supreme Court invalidated a statute requiring plaintiffs in medical malpractice cases to bring a claim within two years of the injury, unless the plaintiff was less than 10 years old, in which case the plaintiff had until his or her twelfth birthday to bring a claim. *Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7, 8 (Mo.

146

1986) (citing § 516.105, RSMo 1978)). The Missouri court found that the statute violated Mo. Const. art. I, § 14, which is an analogous provision to Wis. Const. art. I, § 9.[1] The court explained that putting such limitations on the ability of children to bring claims "plainly ignores the disabilities and limitations that childhood, familial relationships, and our legal system place upon a minor of tender years—who has little if any understanding of the complexities of our legal system." *Id.* at 10. Faced with a similar statutory provision and state constitution, the Texas Supreme Court also concluded that the limitations period violated the Texas Constitution's right to redress provision. *Sax v. Votteler*, 648 S.W.2d 661, 667 (Tex. 1983).

¶ 90. In this case Aicher did not discover her eye condition until after her tenth birthday, and did not file a claim through her guardian ad litem until she was 13, after the time periods in Wis. Stat. § 893.55(1)(b) and Wis. Stat. § 893.56 had expired. For the same reasons as I found the application of Wis. Stat. § 893.55(1)(b) to be unconstitutional in *Makos*, I find the application of the statutes to be unconstitutional here. The statutes are unconstitutional as applied to Ame Aicher because the time for filing an action on her behalf expired before she even discovered her injury. The courthouse door has been closed to her completely, and she has been denied her right to a remedy in violation of art. I, § 9.

¶ 91. I also address the majority's summary conclusion that *Makos* carries no precedential weight, and the majority's subsequent reliance on the *Makos* dis-

[1] Missouri Const. art. I, § 14 states "that the courts of justice shall be open to every person, and certain remedy afforded for every injury to person. . . ." *Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7, 8–9 (Mo. 1986).

sent.[2] Majority op. at ¶ 40. This court has already adopted the United State Supreme Court's treatment of plurality opinions in applying the holdings of that Court. *Lounge Management v. Town of Trenton*, 219 Wis. 2d 13, 21–22, 580 N.W.2d 156 (1998). In a plurality " 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.' " *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 [ ] (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). *See also Marks v. United States*, 430 U.S. 188, 193 (1977). This court should apply the plurality decision in *Makos* to this case and should continue to acknowledge its precedential weight.

¶ 92. In sum, I would apply the three-part test I discussed in *Makos* and reiterated in *Tomczak* to the facts of this case and hold that the statutes of repose involved—§§ 893.55(1)(b) and 893.56—are unconstitutional as applied to Ame Aicher. To do otherwise closes the door of the courthouse to young children such as Ame Aicher and denies them the right to a remedy in violation of Wis. Const. art. I, § 9. For these reasons, I respectfully dissent.

¶ 93. I am authorized to state that Justice WILLIAM A. BABLITCH joins this dissent.

[2] I further note the majority's inconsistency in finding that the *Makos* decision has no precedential value, and then repeatedly seeming to refer to the *Makos* dissent as precedent. One wonders why the majority finds it necessary to overrule *Makos* if indeed it has no precedential value. Majority op. at ¶ 40.