## COURT OF APPEALS
## DECISION
## DATED AND FILED

### October 27, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2178**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CV146**

**IN COURT OF APPEALS**
**DISTRICT III**

LLOYD A. EBERT AND KAREN EBERT,

   PLAINTIFFS-APPELLANTS,

V.

VILLAGE OF GRESHAM D/B/A ELECTRIC UTILITIES,

   DEFENDANT-RESPONDENT,

FRONTIER COMMUNICATIONS OF WISCONSIN, LLC, CHARTER COMMUNICATIONS (CCI), INC. (FICT NAME), CHARTER COMMUNICATIONS, INC. (CORP NAME), CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS HOLDING CO., LLC, CHARTER COMMUNICATIONS VI, LLC, CHARTER COMMUNICATIONS OPERATING, LLC AND CHARTER COMMUNICATIONS HOLDINGS (DE), LLC,

   DEFENDANTS.

        APPEAL from an order of the circuit court for Shawano County: WILLIAM F. KUSSEL, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1      STARK, P.J.   In 2003, the Village of Gresham installed underground electrical wiring within a water main easement on property owned by Lloyd and Karen Ebert.  Fourteen years later, in December 2017, the Eberts' attorney wrote to the Village demanding that it remove the wiring and threatening suit if the Village refused to do so.  After the Village failed to comply, the Eberts filed the instant lawsuit, asserting that the presence of the underground wiring on their property constituted a continuing trespass and seeking a declaratory judgment and injunctive relief.  The Village moved to dismiss the Eberts' lawsuit, arguing they had failed to comply with the notice of claim statute, WIS. STAT. § 893.80 (2017-18).[1]  The circuit court granted the Village's motion, concluding the Eberts were required— but failed—to file a notice of injury within 120 days of the date the wiring was installed.

¶2      The Eberts now appeal, arguing that because the underground wiring constitutes a continuing trespass, a new "event" for purposes of the notice of claim statute occurs every day that the wiring remains on their property.  The Eberts therefore argue that the notice of injury they provided to the Village in December 2017 was timely.  The Eberts also argue that we should recognize and

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The notice of claim statute contains two notice provisions that serve different purposes. *See Yacht Club at Sister Bay Condo. Ass'n, Inc. v. Village of Sister Bay*, 2019 WI 4, ¶19, 385 Wis. 2d 158, 922 N.W.2d 95.  This case involves the "notice of injury" provision set forth in WIS. STAT. § 893.80(1d)(a), rather than the "notice of claim" provision set forth in § 893.80(1d)(b).  *See Yacht Club*, 385 Wis. 2d 158, ¶20.  Thus, although the parties and the circuit court framed the issue as whether the Eberts had timely filed a "notice of claim," we refer to the relevant notice as a "notice of injury."  However, we refer to the statute as a whole as the "notice of claim statute," in accordance with past case law.  *See id.*, ¶19.

apply an exception to the notice of claim statute under the specific circumstances of this case. We reject the Eberts' arguments and affirm.

## BACKGROUND

¶3 The following facts are undisputed, unless otherwise noted. The Eberts own property in the Village, which they purchased in 1998. Their property is subject to a water main easement, which was recorded with the Shawano County Register of Deeds on May 21, 1990. The recorded easement grants the Village "a perpetual easement for the purpose of maintaining an existing water[ ]main in, upon and over" a thirty-foot-wide corridor located along the western boundary of the Eberts' property.

¶4 The Village is a public utility and provides electricity to properties located in the Village. Sometime in 2003, the Village caused underground electrical wiring to be installed within the water main easement on the Eberts' property. The Eberts did not receive any compensation from the Village for its installation of the wiring.

¶5 At the time the wiring was installed, Lloyd Ebert was the Village's administrator. Ebert contends that in 2003, he notified Kenneth Beyer, the Village's then-president, that the underground wiring exceeded the scope of the water main easement. Beyer, however, denies that any such conversation took place. It is undisputed that the Eberts did not file any written notice of injury with the Village regarding the electrical wiring at any point during 2003.

¶6 Instead, on December 7, 2017—approximately fourteen years after the wiring was installed in the water main easement—the Eberts' attorney sent a letter to the Village asserting that there was no utility easement permitting the

3

presence of electrical wiring on the Eberts' property. As such, counsel asserted the wiring constituted "a continuing trespass and an unlawful intrusion" on the Eberts' property. Counsel advised the Village that the Eberts planned to file suit if the wiring was not removed by January 31, 2018. The Eberts' attorney sent a second letter to the Village on January 30, 2018, again asserting that the wiring constituted a continuing trespass. The Village's attorney responded on April 27, 2018, and substantially denied the Eberts' claims.

¶7 On July 5, 2018, the Eberts filed the instant lawsuit against the Village, asserting claims for: (1) continuing trespass; and (2) physical injury or interference with real property under WIS. STAT. § 844.01(1).[2] As relief, the Eberts sought a declaratory judgment, an injunction requiring the removal of the wiring, and a finding that the Village was "occupying the Ebert Property without having the right to do so."

¶8 The Village moved to dismiss the Eberts' claims, arguing the Eberts had failed to comply with the notice of claim statute.[3] Although denominated as a motion to dismiss, the Village submitted evidentiary materials in support of its motion. The parties and the circuit court therefore treated the motion as a motion

---

[2] The Eberts' complaint also asserted claims against Frontier Communications of Wisconsin, LLC, which had installed underground telephone wiring in the water main easement sometime after 2001, and Charter Communications, which had installed underground cable wiring in the easement in 2017. The Eberts ultimately settled their claims against Frontier and Charter, and those parties were dismissed from this lawsuit. As a result, we do not further address the Eberts' claims against Frontier and Charter.

[3] The Village also argued dismissal was warranted because the Eberts' claims were barred by the applicable statute of limitations. In the alternative to its motion to dismiss, the Village moved for a more definite statement under WIS. STAT. § 802.06(5). However, the Village later voluntarily withdrew both its motion to dismiss on statute of limitations grounds and its motion for a more definite statement.

for summary judgment, and the Eberts submitted their own evidentiary materials in opposition to the motion.

¶9 The circuit court ultimately granted the Village's motion and entered an order dismissing the Eberts' claims. The court concluded that under WIS. STAT. § 893.80(1d)(a), the Eberts were required to provide the Village with a written notice of injury within 120 days after the underground electrical wiring was installed in the water main easement in 2003. The court further found that the Eberts did not provide a written notice of injury until their attorney wrote to the Village on December 7, 2017—long after the 120-day notice period had expired.

¶10 The circuit court rejected the Eberts' argument that their December 7, 2017 notice of injury was timely under our supreme court's decision in *Yacht Club at Sister Bay Condominium Ass'n, Inc. v. Village of Sister Bay*, 2019 WI 4, 385 Wis. 2d 158, 922 N.W.2d 95. The court also rejected the Eberts' assertion that they were entitled to an exception to the notice of injury requirement under our supreme court's reasoning in *Gillen v. City of Neenah*, 219 Wis. 2d 806, 580 N.W.2d 628 (1998). In addition, the court determined the Eberts were not entitled to an exception under the three-factor test set forth in *E-Z Roll Off, LLC v. County of Oneida*, 2011 WI 71, 335 Wis. 2d 720, 800 N.W.2d 421. The Eberts now appeal, arguing the court erred by dismissing their claims based on their failure to timely file a written notice of injury.

**STANDARD OF REVIEW**

¶11 We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Here, our review of the circuit court's summary judgment decision requires us to interpret and apply the notice of claim statute. Statutory interpretation presents a question of law for our independent review. *Yacht Club*, 385 Wis. 2d 158, ¶17.

## DISCUSSION

### I. The Eberts failed to timely file a written notice of injury as required by WIS. STAT. § 893.80(1d)(a).

¶12 The notice of injury requirement in WIS. STAT. § 893.80(1d)(a) provides that "no action may be brought or maintained" against a governmental subdivision unless the plaintiff served "written notice of the circumstances of the claim" on the defendant "[w]ithin 120 days after the happening of the event giving rise to the claim." The circuit court found—and the parties do not dispute—that the Eberts did not file a written notice of injury until December 7, 2017. The court further concluded that notice was not timely because the event giving rise to the Eberts' claims was the installation of the underground electrical wiring in 2003.

¶13 The Eberts argue the circuit court erred because it failed to recognize that the electrical wiring constitutes a continuing trespass. "[A]n unprivileged remaining on another's land is a continuing trespass for so long as the defendant wrongfully remains." *Munger v. Seehafer*, 2016 WI App 89, ¶38, 372 Wis. 2d 749, 890 N.W.2d 22 (citation omitted). The Eberts contend that in a continuing trespass case, a new "event" occurs "every day the continuing trespass remains … allowing the filing of a notice of [injury]." The Eberts therefore argue that their

6

December 7, 2017 notice of injury was timely filed within 120 days of an event giving rise to their claims.

¶14    The Eberts' argument in this regard relies heavily on *Yacht Club*. That case, however, is materially distinguishable. In *Yacht Club*, the Village of Sister Bay constructed a performance pavilion in a public park and began using it for public performances in August 2014. *Yacht Club*, 385 Wis. 2d 158, ¶6. "Such performances typically involved live music and often ran after official park hours, occasionally as late as midnight." *Id.*

¶15    The Yacht Club, which administered a condominium complex directly southwest of the pavilion, served a notice of injury on the Village in March 2016, asserting that the "noise pollution" created by the concerts was a private nuisance. *Id.*, ¶¶7, 9. After the Village failed to respond to the notice of injury, the Yacht Club filed suit. *Id.*, ¶10. The circuit court subsequently granted the Village's motion to dismiss, concluding the Yacht Club's notice of injury was untimely. *Id.*, ¶12. The court reasoned that the event giving rise to the Yacht Club's claim was the first concert at the pavilion, but the Yacht Club did not file its notice of injury until approximately nineteen months later. *Id.*

¶16    Our supreme court disagreed. The court explained that under the common law of nuisance, "every continuance of a nuisance is … a new nuisance." *Id.*, ¶24 (citation omitted). The court therefore reasoned that each use of the performance pavilion that constituted a nuisance was "a new nuisance for which [the Yacht Club had] a remedy for any damages incurred." *Id.*, ¶25. The court then observed that some of the concerts at the pavilion may not have constituted nuisances, explaining:

> If the first concert held by the Village in the newly built performance pavilion were an unamplified performance by a string quartet that concluded by 8:00 p.m., it seems unlikely that such a display would offend the Yacht Club or those similarly situated so as to occasion the filing of a notice of injury within 120 days of the event. However, if after the 120 day claim period for the first concert had expired the Village then held a heavy metal concert lasting until midnight, under the Village's argument the Yacht Club would forever lose the ability to sue to abate any nuisance caused by the heavy metal concert.

*Id.*, ¶26. Because it was unwilling to countenance that result, the court concluded that "for purposes of the notice of claim statute, … each individual concert that is alleged to be a nuisance constitutes a new 'event' giving rise to a new 120-day notice of injury period." *Id.*, ¶27.

¶17 *Yacht Club* is distinguishable because it involved a series of individual concerts, each of which may or may not have constituted a separate nuisance. Each individual concert was therefore a separate "event" under the notice of claim statute, for which a new notice of injury could be filed. Here, in contrast, the Eberts have alleged that the presence of the underground wiring on their property constitutes a single, continuing trespass that began in 2003. Thus, as the circuit court correctly noted, "in this case there is only one event, the 2003 utility installation, and not numerous events as was the case in *Yacht Club*."

¶18 Moreover, if the Eberts were correct that each day of a continuing trespass constituted a new "event" triggering a new 120-day period to file a notice of injury, the notice of injury requirement would essentially cease to exist in continuing trespass cases. Under the Eberts' theory, if a continuing trespass existed for fifty years, a plaintiff could take no action for fifty years and then file a notice of injury 120 days after the continuing trespass ended, and that notice would still be considered timely. We refuse to interpret the notice of injury requirement in a

8

manner that would produce such an absurd result. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 (We interpret statutes "reasonably, to avoid absurd or unreasonable results.").

¶19    Additionally, the Eberts' interpretation is inconsistent with the purpose of the notice of injury requirement, which is to provide governmental defendants with the opportunity to investigate and evaluate potential claims. *See Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 593, 530 N.W.2d 16 (Ct. App. 1995). If a claimant in a continuing trespass case could wait to file a notice of injury for years after the continuing trespass began, key witnesses might no longer be available by the time the notice was filed, memories may have faded, and other relevant evidence may have been lost. As such, the delay would significantly hinder the governmental defendant's ability to investigate and evaluate the potential claim. Further, the opportunity for the government to mitigate damages, budget for any monetary consequences, and quickly resolve any claim would be lost, such that the delayed notice of injury would fail to serve its purpose.

¶20    The Eberts argue that under our interpretation of the notice of injury requirement, a governmental entity would be permitted "to forever perpetuate an injurious condition." We are not persuaded because, under the circumstances of this case, any perpetuation of an injurious condition is the result of the Eberts' own choices. It is undisputed that the Eberts were aware of the facts giving rise to their continuing trespass claim in 2003 when the underground electrical wiring was installed. On the record before us, there is no reason the Eberts could not have filed a notice of injury within 120 days of the wiring's installation. Had the Eberts done so, the Village could have promptly remedied the situation; alternatively, if the Village refused to act, the Eberts could have filed suit in order to force the Village to do so. Under either scenario, the Eberts could have prevented the Village from

perpetuating an injurious condition by timely filing a notice of injury. Having failed to do so, the Eberts cannot now complain that the Village has been—or will be—allowed to perpetuate an injurious condition.

¶21    The Eberts also assert that by withdrawing its motion to dismiss on statute of limitations grounds, the Village conceded that the applicable six-year statute of limitations in WIS. STAT. § 893.52(1) had not yet run when the Eberts filed their complaint. The Eberts appear to suggest that because their complaint was timely filed under the applicable statute of limitations, their December 7, 2017 notice of injury must also have been timely under the notice of claim statute. We disagree. WISCONSIN STAT. § 893.52 and WIS. STAT. § 893.80 are separate statutes with distinct requirements. The fact that the Eberts' complaint may have been timely filed under § 893.52(1) does not foreclose a conclusion that the complaint was properly dismissed because the Eberts failed to comply with the separate notice of injury requirement in § 893.80(1d)(a).

¶22    To further explain, a statute of limitations generally "establishes the time frame within which a claim must be initiated after a cause of action actually accrues." *Aicher ex rel. LaBarge v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶26, 237 Wis. 2d 99, 613 N.W.2d 849. In this case, however, the date when the Eberts' claims accrued for purposes of the applicable statute of limitations is irrelevant to our analysis of whether the Eberts timely filed the notice of injury required by WIS. STAT. § 893.80(1d)(a). That statute bars a plaintiff's claim if the plaintiff failed to file a notice of injury within 120 days *of the event giving rise to the claim*. Thus, regardless of when the Eberts' claims accrued, their notice of injury was untimely because it was not filed within 120 days of the event giving rise to their claims—that is, the installation of the underground electrical wiring in 2003. As such, unless an exception to the notice of injury requirement applies, the circuit

court properly concluded that the Eberts' failure to timely file a notice of injury bars their claims.[4]

## II. No exception to the notice of injury requirement applies under the facts of this case.

¶23    The Eberts urge us to recognize and apply an exception to the notice of injury requirement under the specific circumstances of this case. In support of their argument, the Eberts note that article I, section 13 of the Wisconsin Constitution states that no person's property "shall be taken for public use without just compensation therefor." The Eberts therefore argue that they have a constitutionally protected right to exclude the Village from their property. Given this constitutionally protected right, the Eberts contend that the notice of claim statute "should not be construed in a way that permits a governmental entity to engage in an unlawful taking of private property for public use merely because the affected citizen fails to meet a 120-day notice deadline." The Eberts further assert that because a constitutional right is at issue, recognizing an exception to the notice of injury requirement under the circumstances of this case would be consistent with our supreme court's reasoning in *Gillen*.

¶24    The Eberts' reliance on *Gillen* is misplaced. In *Gillen*, the plaintiffs sued the City of Neenah, asserting it had violated the public trust doctrine. *Gillen*, 219 Wis. 2d at 815-16. One of the issues on appeal was whether the plaintiffs'

---

[4] WISCONSIN STAT. § 893.80(1d)(a) provides that a plaintiff's failure to timely file a written notice of injury "shall not bar action on the claim if the [governmental defendant] had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant." On appeal, the Eberts do not develop any argument that the Village had actual notice of their claim prior to December 7, 2017, nor do they argue that their delay in giving the requisite notice did not prejudice the Village. We therefore do not address those issues.

11

failure to file a notice of claim under WIS. STAT. § 893.80(1)(b) (1993-94), barred their claims. *Gillen*, 219 Wis. 2d at 817.

¶25     Our supreme court concluded the "unique circumstances" present in *Gillen* "provide[d] an exception to the notice of claim requirements." *Id.* at 827. The court relied on the fact that the plaintiffs had alleged a violation of the public trust doctrine and were seeking relief under WIS. STAT. § 30.294 (1993-94), which "expressly allows a plaintiff to seek immediate injunctive relief to prevent injury." *Gillen*, 219 Wis. 2d at 822. The court noted that "[b]ecause the goal in the issuance of a permanent injunction is to prevent injury, 'it is not necessary for the plaintiff to wait until some injury has been done'" before filing suit. *Id.* at 821-22 (citation omitted). On the other hand, the court observed that WIS. STAT. § 893.80(1)(b) (1993-94), required a plaintiff to delay filing suit for up to 120 days after filing a notice of claim in order to "provide the governmental subdivision an opportunity to compromise and settle a claim without costly and time-consuming litigation." *Gillen*, 219 Wis. 2d at 822 (citation omitted).

¶26     The court therefore concluded that WIS. STAT. § 30.294 (1993-94), was inconsistent with the notice of claim statute and that the "the general application of [the notice of claim statute] in this case frustrates the plaintiffs' specific right to injunctive relief under § 30.294." *Gillen*, 219 Wis. 2d at 822. The court then observed that where general and specific statutory provisions are in conflict, the specific provision takes precedence. *Id.* The court therefore concluded the specific right to seek injunctive relief in § 30.294 (1993-94), took precedence over the more general requirements set forth in the notice of claim statute. *Gillen*, 219 Wis. 2d at 822.

¶27    As such, the court held that "there is an exception to WIS. STAT. § 893.80(1)(b) where the plaintiffs' claims are brought pursuant to the public trust doctrine under WIS. STAT. § 30.294, which provides injunctive relief as a specific enforcement remedy." *Gillen*, 219 Wis. 2d at 826. The court subsequently clarified that its holding was based on "the unique circumstances of this case," including "the nature of the plaintiffs' claims brought in the name of the State to vindicate the public trust" and "the fact that the plaintiffs' complaint could under WIS. STAT. § 30.294 and, in fact, did request injunctive relief." *Gillen*, 219 Wis. 2d at 827.

¶28    Thus, contrary to the Eberts' argument, the *Gillen* court's decision was not based on the constitutional nature of the claims at issue in that case. Nor does *Gillen* stand for the proposition that an exception to the notice of claim statute exists whenever the plaintiff seeks injunctive relief. Rather, *Gillen* stands for the narrow proposition that an exception to the notice of claim statute exists when a plaintiff alleges a violation of the public trust doctrine and seeks immediate injunctive relief under WIS. STAT. § 30.294.

¶29    Moreover, as the circuit court noted, in addition to being legally distinguishable, *Gillen* is also "factually … distinct" from this case. In *Gillen*, the plaintiffs failed to file a notice of claim against the City before filing suit. *Gillen*, 219 Wis. 2d at 817. The court concluded that under those circumstances, there was a tension between WIS. STAT. § 30.294 (1993-94)—which permitted the plaintiffs to seek immediate injunctive relief in order to prevent injury—and WIS. STAT. § 893.80(1)(b) (1993-94)—which required the plaintiffs to file a notice of claim and then wait up to 120 days before filing suit. *Gillen*, 218 Wis. 2d at 822.

¶30    In contrast, in this case, the Eberts *chose* to wait fourteen years after the underground wiring was installed before providing the Village with a notice of

injury. And, unlike the plaintiffs in *Gillen*, the Eberts are not challenging the requirement that they file a notice of claim and then wait 120 days before filing suit. Instead, the Eberts are seeking an exception to the requirement that they file their notice of injury within 120 days of the event giving rise to their claims. Consequently, the tension that existed in *Gillen* between the plaintiffs' right to seek immediate injunctive relief to prevent injury and the City's right to a 120-day time period in which to evaluate the plaintiffs' claims is not present under the specific factual circumstances of this case. The Eberts do not develop any argument that they had a need for immediate injunctive relief in December 2017 from a condition that had already existed for fourteen years.

¶31     For all of the foregoing reasons, we reject the Eberts' argument that we should recognize and apply an exception to the notice of injury requirement in this case based on our supreme court's reasoning in *Gillen*. The Eberts also argue, however, that we should recognize such an exception under the three-factor test that the court subsequently articulated in *E-Z Roll Off*.

¶32     The *E-Z Roll Off* court considered whether to recognize an exception to the notice of claim statute for antitrust actions brought under WIS. STAT. § 133.18 (2005-06). *E-Z Roll Off*, 335 Wis. 2d 720, ¶3. The court declined to do so, after considering the following three factors:

> (1) whether there is a specific statutory scheme for which the plaintiff seeks exemption [from the notice of claim requirements]; (2) whether enforcement of the notice of claim requirements found in WIS. STAT. § 893.80 would hinder a legislative preference for a prompt resolution of the type of claim under consideration; and (3) whether the purposes for which § 893.80 was enacted would be furthered by requiring that a notice of claim be filed.

*E-Z Roll Off*, 335 Wis. 2d 720, ¶23.

14

¶33  The Eberts argue the first *E-Z Roll Off* factor is satisfied here because their complaint asserted a claim under WIS. STAT. § 844.01(1), which provides that any person claiming an interest in real property may bring an action claiming a physical injury to or interference with that property, and the action may seek "to restrain further injury" or "to abate the source of injury."  The Eberts contend that, similar to the plaintiffs in *Gillen*, § 844.01(1) gives them the right "to seek immediate injunctive relief to remedy the unauthorized governmental trespass," and that right "irreconcilably conflicts with the notice of claim provisions."

¶34  We disagree.  Although WIS. STAT. § 844.01(1) permits the Eberts to seek injunctive relief, as explained above, the conflict with WIS. STAT. § 893.80 that existed in *Gillen* is not present here.  Again, the *Gillen* court concluded that the right to seek immediate injunctive relief in WIS. STAT. § 30.294 (1993-94), conflicted with the requirement in WIS. STAT. § 893.80(1)(b) (1993-94), that a claimant file a notice of claim and then wait up to 120 days before filing suit.  Here, the Eberts are not seeking an exception to the requirement that they wait 120 days after filing a notice of claim before filing suit against the Village.  Instead, they are seeking an exception to the requirement that they file their notice of injury within 120 days of the event giving rise to their claims.  *Gillen* did not hold that a statute granting the right to seek immediate injunctive relief conflicts with that requirement.

¶35  Furthermore, as noted above, the *Gillen* court's ruling was limited to the specific statute at issue in that case.  Despite the Eberts' protestations to the contrary, adopting their reading of *Gillen* would be tantamount to holding that an exception to the notice of claim statute exists in every case in which the plaintiff seeks injunctive relief.  As the Eberts concede, if that were the case, the "exception would swallow the rule."  Although the Eberts contend that the exception they propose is limited to "circumstances where a private landowner advances a claim

15

seeking equitable relief against a governmental entity's continuing trespass," they provide no basis to distinguish such cases from the myriad others in which plaintiffs seek injunctive relief.

¶36 The Eberts have also failed to demonstrate that the second ***E-Z Roll Off*** factor—i.e., that enforcement of the notice of claim requirements in WIS. STAT. § 893.80 would hinder a legislative preference for a prompt resolution of the type of claim under consideration—is satisfied here. *See **E-Z Roll Off***, 335 Wis. 2d 720, ¶23. When considering this factor, we "examine whether the legislature has expressed a preference for prompt resolution of [claims under WIS. STAT. § 844.01(1)] and, if so, whether applying the 120-day notice of claim requirements would somehow hinder that preference." *See **E-Z Roll Off***, 335 Wis. 2d 720, ¶30.

¶37 The Eberts argue the second ***E-Z Roll Off*** factor is satisfied "because applying the notice of claim provisions would frustrate [their] specific right to immediate injunctive relief." They do not, however, explain why they believe that is the case. While WIS. STAT. § 844.01(1) permits a plaintiff to bring an action seeking injunctive relief, nothing in that statute expresses an unambiguous legislative preference for the prompt resolution of claims alleging an injury to or interference with real property. Moreover, we agree with the Village that even if such a preference could be discerned from the text of § 844.01(1), "it would have been served best by [the Eberts] filing a notice of [injury] with the Village within 120 days after the 2003 utility installation," rather than by permitting the Eberts to wait fourteen years to file a notice of injury.

¶38 Relatedly, turning to the third ***E-Z Roll Off*** factor, we conclude that requiring the filing of a notice of injury within 120 days of the 2003 utility installation furthers the purposes for which WIS. STAT. § 893.80(1d)(a) was enacted.

*See E-Z Roll Off*, 335 Wis. 2d 720, ¶23. As discussed above, the purpose of the notice of injury requirement is to provide governmental defendants with the opportunity to investigate and evaluate potential claims. *See Vanstone*, 191 Wis. 2d at 593. It is "axiomatic" that a governmental entity can more effectively investigate and evaluate a potential claim if it receives a notice of injury within 120 days of the event giving rise to the claim. *See E-Z Roll Off*, 335 Wis. 2d 720, ¶37. "In a similar vein, it is more likely that with the passage of time such investigation and evaluation will become more problematic as governmental employees leave their posts, memories fade, and witnesses become unavailable." *Id.* Thus, permitting the Eberts to wait fourteen years before filing a notice of injury, rather than requiring them to file that notice within 120 days of the event giving rise to their claims, does not further the purpose for which the notice of injury requirement was enacted.

¶39  In summary, the Eberts have failed to demonstrate that they are entitled to an exception to the notice of injury requirement in Wis. Stat. § 893.80(1d)(a) under either *Gillen* or the three-factor test set forth in *E-Z Roll Off*. We therefore affirm the circuit court's order dismissing the Eberts' claims against the Village based on the Eberts' failure to timely file a notice of injury.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.